HAMILTON BROTHERS, Appellants, v. JAMES HARTINGER.

**Levy: Actual Custody.** Where the sheriff in attaching a stock of implements makes full inventory, leaves the goods in the building, puts them in charge of a bailee from whom he takes receipt and whom he directs to hold the property until further order of court, it is a sufficient compliance with Code, 2967, which requires the sheriff to take property into his custody, if it be capable of manual delivery, though attaching defendant had access to the building, was allowed to use some of the office furniture in it, and through misapprehension sold two pieces of the machinery which were left on the outside of the building.

**Notice.** The notice required by subdivision 1 of Code, 2967, to be served on the attaching defendant, must be in writing and it must not merely give notice that the writ has issued but also that levy has been made.

**Waiver: ESTOPPEL.** Where plaintiff has insisted on holding the property of defendant under levy of an attachment in spite of the fact that no written notice of levy was served, it is estopped to assert against a counterclaim for wrongful attachment, that defendant has waived the failure to notify by acquiescence in the levy after notice by word of mouth.

**Estoppel: Practice.** One cannot complain of an instruction which is in harmony with one offered by himself.

*Appeal from Hardin. District Court.*—HON. S. M. WEAVER, Judge.

THURSDAY, OCTOBER 17, 1895.

Action to recover four hundred and thirty-seven dollars and twenty cents, with interest, on seven promissory notes executed by the defendant to the plaintiffs. The action was aided by attachment. Defendant answered, admitting the execution of the notes, and setting up a counterclaim on the attachment bond, alleging that the attachment was wrongfully and maliciously sued out and levied, to his damage two hundred dollars. The jury found specially that the attachment was wrongfully, but not maliciously, sued out, and two hundred dollars was allowed to the defendant on his counterclaim. Plaintiffs appeal.—*Affirmed.*

*A. M. Bryson* and *Chas. L. Hays* for appellants.

*C. E. Albrook* for appellee.

Given, C. J.—I. Plaintiffs contend that there was no valid levy of the attachment upon any personal property, because no written notice of such levy was given to the defendant, and because the sheriff did not take any of said property into his custody, and therefore the plaintiffs are not liable to the defendant in damages for what was done to said personal property. The sheriff's return on the attachment shows that on the third day of February, 1894, the writ came into his hands and that on the same day he attached certain real estate described, "by giving the defendant personal notice of said levy, as shown by exhibit A, hereto attached: 'Exhibit A. To

James Hartinger, Defendant: You are hereby notified that on the third day of February, 1894, a writ of attachment was issued from the office of the clerk of the district court of Hardin county, Iowa, in the above-entitled cause; and by virtue thereof I did on the third day of February, 1894, levy upon the following described real estate, to-wit: The west $\frac{1}{2}$ of southeast $\frac{1}{4}$ of section 21-88-21, in Hardin county, state of Iowa, · as your property, by making entry thereof on page 167 of the Incumbrance Book of said county.' Jno. T. Boylan, Sheriff." The return further shows that on the fifth day of February, 1894, "I further served the same, by attaching, as the property of the defendant, the personal property as shown in Exhibit B, hereto attached, and made a part hereof: 'Exhibit B. Sheriff's inventory on attachment: One Globe windmill; 1 one-hole corn-sheller; 1 Shoudy windmill attachment; 4 barrels and casks of machine oil, part full; 1 Charles City Seeder; 4 walking plows; 3 Walton; 1 Weir; 3 Peoria seeders; 1 Caskadden feedmill; 1 pair sleds; 1 Norwegian disk harrow; 1 Walton 72-tooth harrow; 1 Evans 72-tooth harrow; 2 pump heads and box pump repairs; 1 box sections and rivets; 4 cans machine oil; 2 dozen boxes of axle grease; 1 Alpine office safe; 1 office table; 1 letter box; 1 office stove; 3 sleighs (said to be commission); 1 strawstacker (Newark Machine Co.)' " On the fourth day of May, 1894, the sheriff made the following amendment to his return: "Comes now Jno. T. Boylan, sheriff of said county, and makes this amended return of his doings under the writ of attachment in this cause, under the direction of the court; and do further certify and return that on the fifth day of February, 1894, I entered upon the premises of the defendant, James Hartinger, at Alden, Iowa, being his place of business in the sale of farm machinery, agricultural implements, etc., and informed

him that I had a writ of attachment against him in favor of the plaintiff, and that by virtue thereof I levied and do levy on his 'stock of implements and machinery of every nature and description, pumps and everything of every kind, stock of all kinds,' all of which property was then and there present. I gave him personal notice, by word of mouth, of said levy and informed him that I would place the same in the hands of his son, Charles Hartinger, a man of lawful age, as my bailee. That I did not remove any of the said stock from the building in which the said James Hartinger was doing business, but placed the same in the possession of said Charles Hartinger as bailee, and so informed said defendant, to which he assented; and I now hold the levy on said personal property through my said bailee, who receipted to me for all of said goods, which receipt I still hold. That I found said James Hartinger in the possession of said personal property so levied upon, and not only gave him notice that I would make said levy, but by word of mouth, in his presence and hearing, that I had made said levy. May 4th, 1894. Jno. T. Boylan, Sheriff."

In addition to what appears in his return, the sheriff testifies that after having informed the defendant of the attachment, and notified him that he took possession of the property under the attachment, he went around and made a memorandum of the property from which Exhibit B was afterwards made, and then and there turned the property over to Charles Hartinger, and took his receipt therefor, and directed Charles that "he must hold that property, and every particle of it, until order of the court." The defendant then delivered to Charles a key to the building, and Charles remained in control of the goods in the building where they were up to the time of the trial. The defendant kept another key by which he had access to the building, and, with the permission of Charles, he

sometimes used the office, the safe, table and stove therein. It appears that the articles enumerated in exhibit B did not include all the property which the defendant had in his establishment. There was some four hundred dollars worth of twine, and one hundred dollars worth of mower guards, and other articles. After the levy the defendant sold two harrows that were outside of the building, on the platform, under the belief that they were not included in the levy.

II. Subdivision 2 of section 2967 of the Code provides that, "if the property is capable of manual delivery, the sheriff must take it into his custody, if it can be found." This property was capable of manual delivery, and was found. The right to possession and custody unquestionably passed to the sheriff the moment he levied the attachment. It is true that he might have removed the goods, and held them in his individual control; but, instead of incurring that cost, he pursued the more usual practice of retaining the goods in his custody through one whom he selected to take supervision thereof for him, in the place where they were. That the defendant was allowed access to the office, and to use the safe, stove, and table therein, and that, because of a misunderstanding as to what was levied upon, he sold two of the harrows, certainly did not divest the sheriff of his custody of the other goods levied upon. None of the cases cited by appellants on this question are in point, as the facts are materially different. This mode of taking and holding custody of attached property has been too often approved to require citation of authorities. It seems to us entirely clear that, so far as custody is concerned, the levy was legal.

III. Subdivision 1 of section 2967 of the Code requires that "notice of attachment" be given to the defendant, if found in the county. In *First Nat. Bank of Newton v. Jasper Co. Bank*, 71 Iowa, 487 (32 N. W.

Rep. 400), it is held that this "direction extends to the levies upon all property subject to attachment." Subdivision 3 of said section provides that "stock in a company is attached by notifying the president." In *Moore v. Opera-House Co.,* 81 Iowa, 46 (46 N. W. Rep. 750), it is held that, "until the notice required by this provision of the law is given, no valid levy can be said to be made." It is further said: "This notice implies more than a mere verbal declaration of the officer holding the writ. It should be a notice in writing." It will be observed that the language of said subdivisions is the same as to notice, neither specifying the kind of notice. We see no reason why the same rule should not apply to levies of attachments under either; therefore, hold that written notice is required in all cases. See, also, *Bank v. Kellog,* 81 Iowa, 125 (46 N. W. Rep. 859). The notice required is "notice of attachment." We have seen that in this case written "notice of attachment" and of the levy upon the real estate was given to the defendant. If "notice of attachment" means simply notice of its issuance, then defendant had the written notice required; but, if it means also notice of the levy, then he did not have the written notice of the levy on said personal property. We think the notice contemplated is of the levy, and therefore the levy upon said personal property was not valid, because no written notice of said levy was given to the defendant.

IV. We have seen that by the issuing of their attachments, the plaintiffs caused this personal property to be seized, and held from the defendant thereunder, from the fifth day of February, 1894, to the trial of this cause. It is evident that both parties, with full knowledge of all the facts, acquiesced in the levy as a valid levy; and the question presented is whether the plaintiffs should now be heard to question the validity

of that levy because the sheriff failed to give the defendant written notice thereof. The notice required is for the benefit of the defendant. He having notice thereof, and having acquiesced in the levy as valid, and permitted the property to be taken and held under it, may well be presumed to have waived notice in writing. In executing the attachment, the sheriff acted for the plaintiffs, and for them took and held the property without written notice. Surely the plaintiffs should not now be heard to plead this omission of their agent, which the defendant has waived, as a defense for wrongfully suing out the attachment, and seizing and detaining the property from the defendant. In *Bank v. Kellog, supra,* the action was upon a promissory note and a counterclaim that the attachment was wrongfully sued out. The levy was upon land, and this court held that the district court correctly excluded evidence tending to support the counterclaim, because it was not shown in the record that notice of the levy was given to the defendant. It does not appear that an estoppel was claimed in that case against the plaintiffs, nor that there were facts upon which to claim it. It does not appear, as in this case, that the defendant had actual notice of the attachment and levy, and acquiesced in the levy as valid. Neither does it appear, as in this case, that the plaintiffs persisted in maintaining the levy as valid, and in holding the property levied upon from the defendant under it. The question considered in that case, so far as relates to this inquiry, was whether notice is required, and it was held that it is. We think the plaintiffs should be held to be estopped from now setting up a want of written notice of the levy on said personal property as a defense to defendant's counterclaim.

V.   Plaintiffs complain of the following part of the ninth paragraph of the charge: "If you find that the attachment was wrongfully sued out, and that defendant has sustained injury thereby, he will be entitled to recover what are known as 'actual damages,' if any have been suffered. Actual damages in this case are (1) the depreciation, if any, in the market value of property levied upon by reason of the defendant's being thereby deprived of his control over them; (2) the value, if anything, of the use of said property levied upon during the time it has been in custody of the sheriff or his bailee; (3) the loss of employment by defendant, if any, occasioned by the seizure of said property." They contend that the defendant failed to allege that he sustained damage by reason of the depreciation in value of the property, or that such damage was unpaid, and that there is no evidence of any loss of property nor of effort to obtain employment and that, therefore, these elements of damage should not have been submitted to the jury. We think there was both allegations and evidence to support the instructions, and plaintiff's counsel must have so thought, for it appears that an instruction was asked by plaintiffs as follows: "If you find that the attachment was in fact wrongfully sued out, and that the levy was in fact made on the personal property, the measure of damages for the wrongful suing out of the writ will be the actual depreciation in the value of the property by reason of any failure to make sales because of the levy, if any, and loss of use of property, if any, and the loss of employment by the defendant, if any; but you are not to consider, as elements of damage, any testimony of loss by reason of inability to carry on his business, except as above, nor any loss of rental for his building." The instruction given is in harmony with that asked, and surely, hav-

ing asked this instruction, the plaintiffs should not now be heard to complain of the one given.

We find no error in the record, and the judgment of the district court is *affirmed.*