LEE COUNTY SAVINGS BANK et al., Appellees, v. SNODGRASS BROTHERS, Appellees; CLAUDE E. WILSON, Intervener, Appellant.

ATTACHMENT: Levy—Sufficiency. The act of the officer (a) in reading the writ to the defendant in attachment, (b) in telling the defendants that the property in question was levied upon, and (c) in leaving a portion of the property in the possession of defendant's employees, to be held by them for the officer, is sufficient to create a lien in favor of the attaching plaintiff, as against an intervener claiming priority under a mortgage.

CHATTEL MORTGAGES: Description of Property—''Live Stock''
—Scope of Term. A mortgage which covers "live stock, including steers, cows, calves, bulls, hogs, and sheep," must be construed to embrace horses and mules, notwithstanding said specific enumeration.

ACKNOWLEDGMENT: Certificate—Sufficiency—Constructive Notice. A certificate of acknowledgment to a chattel mortgage is fatally defective when it fails to show that the acknowledgment was as to the *execution* of the instrument. It follows that constructive notice is not imparted by an instrument not so acknowledged. (Secs. 2948, 2959, Code, 1897.)

CHATTEL MORTGAGES: Description of Property—Specific Description Excluding Further Inquiry. A chattel mortgage which distinctly describes the mortgaged property as located on a specifically described farm, *without other recitals in the mortgage suggesting further inquiry*, and without other suggestive knowledge on the part of the searcher, is not notice to one who actually reads the mortgage that the mortgaged property is, in reality, situated on another *separate and distinct* farm belonging to the mortgagor and located in the same township.

CHATTEL MORTGAGES: Lien and Priority—Removal of Property without Consent of Mortgagee. A chattel mortgagee who, under the particular description contained in his mortgage, loses all right of priority over innocent third parties in case the property is removed from a particularly designated location, i. e., a designated farm, loses such right of priority even though the removal is without his consent.

*Appeal from Davis District Court.*—SENECA CORNELL, Judge.

MARCH 12, 1918.

THE appellant intervener is a mortgage creditor of the defendants. The appellees claim that they have priority over the mortgage by reason of the levy of an attachment. The trial court held this claim of priority good in part, and the intervener appeals.—*Affirmed.*

*D. H. Payne, T. J. Hysham,* and *Buel McCash,* for appellants.

*H. C. Taylor* and *George B. Stewart,* for appellees.

SALINGER, J.—I. The evidence fairly shows that the sheriff made a valid levy upon a part of the property in controversy. The evidence shows also that part of said property was not physically removed by the sheriff at the time it is claimed he made the levy. What he did do was to read the writ of attachment to the defendants, to tell them and their employees that the chattels were levied upon, and then leave all not physically moved in the possession of some of the defendant's employees, instructing them that they were keeping possession for him. This does not bring the case within *Hibbard v. Zenor*, 75 Iowa 471, 476, as appellant asserts, but it is more nearly within the rule of cases like *Hamilton Bros. v. Hartinger*, 96 Iowa 7.

1. ATTACHMENT: levy: sufficiency.

We agree with the conclusion of the trial court that, when the transaction is viewed in the light of all the evidence and the attending circumstances, the acts of the sheriff were sufficient "to create a lien in favor of the plaintiffs as against the intervener."

II. The mortgage describes the property conveyed as being live stock, "including" steers, cows, calves, bulls, hogs, and sheep. Horses and mules were levied on, and appellees urge that the mortgage never included any horses or mules. It does cover live stock. The statement that live stock includes steers, cows, calves, bulls, hogs, and sheep is self-evidently true. But a correct enumeration of some things that the term "live stock" includes does not take from the total of what live stock embraces. If "live stock" ever includes horses and mules,— and it does,—it still includes them even though the term also includes cows and steers. This is not a description which limits the property covered to steers, etc., but one which declares that steers, etc., are part of the live stock mortgaged.

2. CHATTEL MORTGAGES: description of property: "live stock:" scope of term.

III. It is held in *Reeves & Co. v.*

3. ACKNOWLEDG-
MENT: certifi-
cate: suffi-
ciency: con-
structive
notice.

*Columbia Sav. Bank,* 166 Iowa 411, that, because of the provisions of Code Sections 2948 and 2959, the recording of a chattel mortgage does not give constructive notice if the certificate, though it purports to be made by a notary public, does not set forth the name of the county for which such official is a notary. Section 2948 declares that the officer taking the acknowledgment must endorse upon the instrument a certificate which shall set forth the title of the person before whom the acknowledgment was made. It further provides that the certificate must set forth that the person making the acknowledgment "acknowledged the execution of the instrument to be his voluntary act and deed." One requirement is precisely as mandatory as the other. To enforce both strictly is but in harmony with the general rule requiring strict compliance with provisions creating notice by construction. We are constrained to hold that the recording of the mortgage held by intervener did not impart constructive notice.

IV. That constructive notice was not

4. CHATTEL MORT-
GAGES: de-
scription of
property:
specific de-
scription ex-
cluding further
inquiry.

effected is not material, because the appellees had actual notice of all that reading the mortgage would advise of. It is not pretended that the copy spread upon the record is not a true copy of the mortgage. The evidence satisfies us that the appellees, either by themselves or by agents, read that before any levy was attempted. While there is great conflict upon the point, we are satisfied that, before the levy was made, the sheriff and the appellee Huston were told what amounted to a statement that the property about to be levied on belonged to some unnamed person other than the attachment defendants,—at the least, that someone had a claim or lien upon said property,—and that, if levy was made, it would be at the peril of account-

ing to that other person. Now, when someone who is about to levy is told in general terms that there is a lien upon the property which is claimed to be superior to the levy, the law puts some duty upon the person who is thus warned. It will help to make clear what that duty is by pointing out what it cannot be. Such a warning does not require the one proposing the levy to search the world for evidence showing affirmatively that there is no prior lien. The creditor and his agents have no power to compel the mortgagor and mortgagee to sign a confession that the asserted mortgage is junior to the proposed levy. They cannot have a suit tried before levying to determine who has priority. It follows that all the creditor or the sheriff need do, when so warned, is to make effort within reason to ascertain the truth. Concretely put, if reasonable inquiry would disclose the mortgage is prior, then the levy is junior. What were appellees apprised of? In this state, recording a chattel mortgage is of no effect unless record be made in the office of the recorder of the county wherein the mortgagor lives when he executes the mortgage. We think the appellees had no notice of anything except what the mortgage recorded in Davis County disclosed, and reasonably suggested. No other mortgage was made. They were proposing to levy upon property found on the Kays farm, owned by the mortgagors. The mortgagors owned another farm known as the Snodgrass farm. The two farms are separated by distance, and are operated as separate farms. The Snodgrass farm lies in Sections 13, 14, 15, Range 12, Prairie Township, Davis County. The Kays farm lies in Sections 24 and 25, in the same township. When the appellee went to the record, he found a mortgage which covered:

"All live stock of any age, sex, color, and description, including steers, cows, calves, bulls, hogs and sheep now located on the farm of parties of the first part *situated on*

Sections 13, 14, and 15, Range 12, Prairie Township, Davis County, Iowa." On all such live stock as may be "at any time hereafter brought *on the above described premises.*" Also all increase and additions thereto or live stock intermingled therewith, *"or brought or located on the above described premises."*

We need not determine what the rights of the parties would be, had the mortgage recited that the property mortgaged was all the live stock owned or possessed by the mortgagor, and that it was then situate upon Sections 13, 14, and 15, and further recited that it should cover all additions acquired by the mortgagor, or even if the declaration had been not more than that the mortgage conveyed all the live stock owned or thereafter to be owned by the mortgagors, no matter where found, and including that situate upon Sections 13, 14, and 15. We need not determine what the rights of the parties would be if the record copy and other facts known to appellees left it an open question whether the property then found on Sections 24 and 25 was intended to be covered by the mortgage.

The execution of a chattel mortgage does not raise the presumption that the mortgagor is the owner of goods covered by the mortgage, especially as against one not a party to the mortgage. *Syck v. Bossingham,* 120 Iowa 363. A valid mortgaging of increase requires at least that the mortgagor have a present interest, at the time the mortgage is made, in the property whose future increase is being mortgaged. The appellees were given priority on what was seized on the farm in Sections 24 and 25, only. It appears that the property seized on Sections 24 and 25 was not on Sections 13, 14 and 15 when the mortgage was made. It has already been stated it was on Sections 24 and 25 when seized. When the mortgage was made, there was live stock on both farms. The mortgage record made no claim that the property mortgaged was owned by these defendants, nor

was it silent on where the property mortgaged was situate. No difficulty is caused by mere silence. Leave out the location, and the case would be fairly within cases like *King v. Howell*, 94 Iowa 208, which hold certain attempts at description to be no description at all. As said in *Packers Nat. Bank v. Chicago, M. & St. P. R. Co.*, 122 Iowa 503:

"The age and sex would be of slight assistance in identifying particular animals, and ownership, possession, place, and party from whom purchased would furnish a very uncertain guide in enabling a subsequent purchaser seeking to determine whether the animals in question were covered by some chattel mortgage recorded at a distant place."

If one reject the affirmative description of location on Sections 13, 14, and 15, there would be no description. The case is stronger for the appellees than a failure to describe. The mortgage makes an affirmative representation that, when the creditor has ascertained the property he is about to seize is not on Sections 13, 14, and 15, he may assume that the mortgagee has no interest in what the creditor is proposing to take. We need give this conclusion no great elaboration. It is fully sustained by the decided cases. The appellees have priority, not merely because there was an insufficient description, if it was that, but because the description given is "essentially different from the property in controversy." *Adams v. Commercial Nat. Bank*, 53 Iowa 491. As is said in *Ivins v. Hines*, 45 Iowa 73, at 74, 75, "But the natural effect of the specific description was to stifle all further inquiry." The record does not impart constructive notice of the property in a location other than the one named in the mortgage. *Farmers' & Merchants' Bank v. Stockdale*, 121 Iowa 748. Constructive notice and actual notice have the same effect on this point. If being treated as though one had read the mortgage record will not give notice of a location other than the one named in the record, neither will actual reading. See also *Packers Nat. Bank v.*

*Chicago, M. & St. P. R. Co.*, 122 Iowa 503, and *First Nat. Bank of Wadena v. Hendrickson*, 61 Minn. 293 (63 N. W. 725), wherein it is said:

"But instead of this, the location was definitely fixed and made certain, and, rejecting this item as a mistake, there was nothing left to suggest or govern an inquiry."

5. CHATTEL MORT-
GAGES : lien
and priority :
removal of
property with-
out consent of
mortgagee.

Appellant urges upon us that he did not consent to moving the property from the Snodgrass farm upon the Kays farm. That fact might be very material if we had the question whether a mortgagee loses the right to foreclose because the mortgagor has moved the property. As between mortgagor and mortgagee, the latter could have shown that the property found on the Kays farm was taken from the Snodgrass farm, and was included in the mortgage. The rights of the mortgage holder could not be cancelled, as between him and the giver of the mortgage, if the latter moved property from a farm owned by him in Lyon County, which property was covered by a mortgage duly recorded in that county, to a farm owned by the mortgagor in Lee County. But while the mortgagee might seize the property in Lee County, having this right certainly does not change the law of notice. And if a creditor who knew nothing except that his debtor had mortgaged live stock situate in Lyon County, seized live stock upon a farm owned by his debtor in Lee County, the right of the mortgagee to pursue the property has no bearing on whether the creditor knew, before seizure, that the property found in Lee County was mortgaged.

Unless the appellees were bound to assume that any property of their debtor found anywhere must at one time have been located on the place described in the mortgage, then their investigation was safely over as soon as it became certain that the only mortgage there was to read did not purport to cover property found in the location on which

they were about to seize it. The debtor could have property which was never on the place described in the mortgage. And a description which declares, without anything more that is a tangible aid to identification, that the property is on one farm, gives no notice that it covers property on a different farm. The appellees knew there was a mortgage, but that knowledge adds nothing to the mortgage.

V. In view of the conclusions we reach, we give no consideration to the claim of the appellees that the cause was erroneously transferred to equity.—*Affirmed.*

Preston, C. J., Ladd and Evans, JJ., concur.