## NOE v. LAYTON.

Opinion delivered October 12, 1901.

1. LANDLORD'S LIEN—SUPPLIES—REPLEVIN.—Where a landlord, having a lien for supplies furnished on a crop raised by a share-cropper, with the latter's consent took possession of the crop under an agreement that he might sell it and credit its value on the account for

supplies, neither such share-cropper nor any one holding under him can maintain replevin for the crop against the landlord without first paying or offering to pay the price of the supplies for which the crop was held. (Page 553.)

2. INNOCENT PURCHASER—GINNER'S RECEIPT.—Under Sand. & H. Dig., § 4798, the purchaser of a ginner's receipt for cotton in the possession of such ginner is not considered an innocent purchaser of such cotton against the landlord's lien for supplies furnished. (Page 554.)

3. LANDLORD'S LIEN—ESTOPPEL.—A landlord will not be estopped to enforce his statutory lien on his tenant's crop of cotton by reason of the fact that he has accepted from the tenant in part payment of his claim money paid in consideration of the tenant's assignment of the ginner's receipt for such cotton, if it does not appear that at the time he accepted the money he knew the consideration for which it was paid. (Page 555.)

Appeal from Marion Circuit Court.

E. G. MITCHELL, Judge.

### STATEMENT BY THE COURT.

In 1899 T. S. Noe made a contract with Alex and Andy Davis by which Noe agreed to furnish land, farm implements, work-animals and feed for same. The Davis brothers were, on their part, to cultivate the crop, and they were to have one-half of the crop raised, which half of the crop was to stand good to Noe for any supplies furnished by him to the Davis brothers during the crop season. The crop was raised by the Davis brothers on Noe's land under this contract. Noe furnished supplies, which were not paid for, and, when the cotton was gathered, it was, under direction of Noe, placed in his crib. Afterwards it was hauled to Hurst's gin by Noe and Andy Davis, and placed by them in the gin in the name of the two brothers, and was afterwards ginned and the cotton put in one bale. Though placed in the gin in the name of the two brothers to distinguish it from other cotton, the evidence shows that it was really under control of Noe, and held for his supplies, he having agreed that he would ascertain the highest market price for the cotton, and allow a credit for same on the account due him for supplies. While the cotton was still at the gin, Alex Davis, with the consent of his brother, sold the cotton to Baker, the agent of A. S. Layton, exhibiting to him the following receipt or memorandum signed by the ginner Hurst, to-wit:

"Gin No. 65, Wt. 466; bagging and ties not settled for. [Signed] H. C. Hurst."

Baker inquired of Davis whether there were liens on the cotton, and was told that there were no liens on it, and Baker, without making further inquiry, paid him for the cotton. Noe refused to surrender the cotton, and Layton brought this action of replevin for it. The other facts are sufficiently stated in opinion. There was a verdict and judgment in favor of Layton, from which Noe appealed.

*Appellant pro se.*

The court erred in refusing to instruct the jury that the relation of employer and employee existed. 32 Ark. 436; 34 Ark. 179; *id.* 678; 39 Ark. 286; 48 Ark. 204; 54 Ark. 346. *Cf.* Sand. & H. Dig., § 4795. The tenant or employee could not dispose of his interest in the crop so as to defeat appellant's lien, without his consent in writing. Sand. & H. Dig., §§ 4793, 4795; 54 Ark. 346. There was no sale of the cotton to appellee, as against appellant's interest. Sand. & H. Dig., § 4798.

*S. W. Woods* and *J. C. Floyd,* for appellee.

The record fails to bring the instructions before the court in such a way as to justify the review. 36 Ark. 491; *id.* 74; 21 Ark. 422; 2 Ark. 415; 60 Ark. 250; 54 Ark. 16; 38 Ark. 528; 32 Ark. 223; 46 Ark. 207; 28 Ark. 548-9; 111 U. S. 148; 69 Ala. 524. If the relation of landlord and tenant existed, appellant's sole remedy would have been by enforcing his landlord's lien, under the statute. 31 Ark. 131; 24 Ark. 545. Appellant is estopped to claim the ownership of the cotton, by his own acts and declarations. 55 Ark. 296; 33 Ark. 465; Bish. Cont. 1203, 1103, 1110, 1109, 1114; 7 Am. & Eng. Enc. Law, 18. Appellant ratified the sale. 31 Ark. 131; 35 Ark. 196; 44 Ark. 306. There being evidence to support the verdict, it will not be disturbed, though it is not clear that it is supported by a preponderance of the evidence. 57 Ark. 577; 13 Ark. 306; 15 Ark. 540; 33 Ark. 811; 51 Ark. 467.

RIDDICK, J., (after stating the facts). This is an appeal by Noe from a judgment of the circuit court rendered against him in favor of Layton for the possession of a bale of cotton. It is said by counsel for Layton that the objections and exceptions made by defendant Noe to the instructions given by the circuit judge to the jury were too general, and do not raise the questions concerning such instructions which are presented by Noe in his brief. We

may admit that this is true, but the question of the sufficiency of the evidence to sustain the verdict is raised, and on that point, even though the instruction be considered as correct, we think the judgment must be reversed. It is very clear from the evidence that Noe had furnished supplies to the Davis brothers to enable them to make a crop on his land, and that he had not been paid for such supplies. Under our statute giving the landlord a lien on the interest of the tenant or employee in the crop for the payment for supplies furnished by him to the tenant or employee to enable him to make the crop, it is immaterial whether the relation of the Davis brothers to Noe be considered that of tenants or employees; for in either case "the act applies, and the lien exists." *Tinsley* v. *Craige,* 54 Ark. 346; Sand. & H. Dig., § 4795.

Take either view of this matter, and still Noe had a lien on the cotton in controversy for the price of the supplies which he had furnished the Davis brothers to enable them to make the crop. It is equally plain that he had, with the consent of the Davis brothers, taken possession of this cotton with the understanding that he should sell it and credit its value on the account for supplies. On these points there is really no conflict in the evidence, as we see it, and it is clear, under this state of facts, that neither the Davis brothers nor one holding under them could maintain replevin for the cotton against Noe, without first paying or offering to pay the price of the supplies for which he held the cotton. *Buck* v. *Lee,* 36 Ark. 525; *Roth* v. *Williams,* 45 *ib.* 447.

But counsel for Layton contend that he was an innocent purchaser, and bought the cotton without notice of the lien for supplies. At the time he purchased the cotton it was at the gin where it had been left by Noe and one of the tenants. The cotton itself was not delivered to Layton. He bought on the statement of the tenant that there was no lien on the cotton, and received from the tenant, not the cotton, but a ginner's memorandum or receipt for the same. It seems from Layton's own testimony, in which he states that these same parties had made a crop on Noe's land the previous year, that he and his agent knew they were tenants, and yet bought on their statement and the ginner's receipt only, without inquiring either of the ginner or the landlord as to the existence of liens. Now, the statute, which seems to cover cases of this kind, expressly provides that a purchaser or assignee of such a ginner's receipt shall not be considered an innocent purchaser against the lien of a landlord for supplies, and we conclude under

the facts of this case that Layton was not in law an innocent purchaser. Sand. & H. Dig., § 4798; act of April 6, 1885.

Again, it is said that Noe is estopped from claiming the cotton in this case because one of the tenants paid him a part of the money received for the cotton. But there is nothing in the evidence, as brought here, to show that Noe, at the time he accepted this money on his debt, knew that it was part of the proceeds of the cotton. Counsel for appellee assert that he did know it, but the record here does not sustain this assertion. We see nothing in the other facts alleged sufficient to constitute an estoppel against Noe, and our conclusion is that the evidence, as set out in the bill of exceptions, does not support the verdict and judgment.

For this reason the judgment is reversed, and the cause remanded for new trial.