BANK OF COMMERCE OF EARLE *v.* TUBB.

Opinion delivered January 22, 1923.

LANDLORD AND TENANT—LANDLORD'S LIEN—CONVERSION OF CROP.— Where a tenant, after having grown a crop of cotton, shipped it to a factor out of the State and subsequently sold it to defendant out of the State, there was no liability on the purchaser's part for defeating the landlord's lien, in the absence of prearrangement or connivance on the purchaser's part, though both the tenant and the purchaser were residents of the State at the time of the conversion of the crop in another State. .

Appeal from Crittenden Chancery Court; *Archer Wheatley,* Chancellor; reversed.

*A. B. Shafer,* for appellant.

The record discloses that appellant had nothing to do with shipping the cotton to Memphis and knew nothing about such shipment until the event actually occurred, which state of facts distinguishes this case from that of *Walker* v. *Rose,* 153 Ark. 599. There is here no question of comity as there is in 132 Ark. 592. The Arkansas statute giving a landlord a lien on his tenant's crop does not have extraterritorial effect so as to preserve that lien after the cotton is shipped out of the State. Nor does the fact that Tennessee has a similar statute help the Arkansas landlord. 75 Miss. 150; 82 Miss. 747; 129 U. S. 355; 16 R. C. L. p. 989; *Kirk* v. *Bailey-Ball-Pumphrey Co.* (Tenn.) ms. op.

*Hughes & Hughes,* for appellee.

Equity acts *in personam* and not *in rem.* 1 Pomeroy's Eq. Juris. sec. 429.

Where a court has jurisdiction of the person, it may render an appropriate decree acting directly upon the person, although the subject-matter may be without the jurisdiction, compelling the performance of a contract, or prevent the prosecution of an action outside the jurisdiction. Without regard to the situaion of the subject-matter, courts consider the equities, and enforce obedience to their decrees by process *in personam*. 21 C. J. p. 150-151. See also 53 Ark. 71. A purchaser who contrives with a tenant to destroy a lien is liable for the value of the property which has come into his hands. 34 Ark. 691; 67 Ark. 362; 69 Ark. 551; 72 Ark. 132; 95 Ark. 32; 103 Ark. 91. A mortgage or lien created under the statutes of Arkansas still exists, although the property, which is the subject-matter thereof, has been removed from the State 1 Wharton, Conflict of Laws, p. 717; 173 Fed. 471; 72 Ark. 132; 129 U. S. 355; 96 Ala. 214; 99 Fed. 187; 29 Fed. 156; 52 Am. St. Rep. 780; 132 Ark. 592. While no extraterritorial operation of our statute is claimed, it is also true that other States give effect to rights acquired under foreign statutes, within certain known limits. This case is not within any of the exceptions. Dicey, Conflict of Laws, XCIII; 241 Fed. 690; 114 Tenn. 344.

*A. B. Shafer*, for appellant, in reply.

There is a distinction between contract and statutory liens. A contract lien is not limited to any particular jurisdiction, whereas a statutory lien is only enforceable within its jurisdiction. 3 Barb. (N. Y.) 89.

McCULLOCH, C. J. The plaintiff, Mary E. Tubb, owns a plantation in Crittenden County, and rented it for the year 1920 to Manly Fox for the stipulated rental price of $8,000. Fox mortgaged his crop on the plantation to the defendant, Bank of Commerce of Earle. a domestic banking corporation doing business at the town of Earle, in Crittenden County. Of the crop of cotton grown and gathered by Fox, he sold five bales to the defendant at the latter's place of business in Arkansas, and he shipped

twenty-nine bales to the Nebhut Cotton Company, of Memphis, Tennessee, as his factors. After the shipment had reached the warehouse of the factors in Memphis, the defendant, acting through its vice-president, met Fox in Memphis and purchased the cotton from Fox and credited the proceeds on the latter's indebtedness to the defendant. The whole transaction occurred in the city of Memphis, where the cotton was then situated.

The defendant knew at the time that it purchased the five bales of cotton from Fox in Crittenden County, as well as when it purchased the twenty-nine bales from Fox in Memphis, that the cotton was grown on the plantation of Mrs. Tubb, and that the rent was unpaid.

This is an action instituted by Mrs. Tubb against the defendant asserting a landlord's lien on the cotton sold to defendant and seeking to hold the latter liable by reason of having received and converted the cotton upon which the lien is claimed. The material facts are undisputed.

The principles which control the present controversy are stated in another opinion of the court handed down this day. *Sledge & Norfleet Co.* v. *Hughes, ante,* p. 481. In that case we stated the law to be that " if the conversion took place in Tennessee, the law of that State must govern the question of liability," but that, if the conversion occurred in the State of Arkansas, our laws control, and the lien is effective, unless waived, or if the cotton was transported out of the State by the connivance here of appellant so as to destroy the lien and prevent its enforcement, this establishes liability on account of violation of the rights of the landlord.

In each of the two cases in which the law was declared as above quoted we found from the undisputed facts that the conversion took place in Arkansas and that there was liability for the conversion under the laws of this State. In the present case, however, the facts are undisputed that the conversion took place in the State of Tennessee, and, as shown in the opinion in the other cases

just referred to, the Supreme Court of Tennessee has declared the law to be that the statutory lien of another State has no extraterritorial effect, and there can be no recovery under the laws of Tennessee under such a lien created by the laws of another State.

In the present case the cotton was shipped by the tenant, not to the defendant or its agents, but to a cotton factor of the tenant's own selection. There is no evidence of any prearrangement between the tenant and defendant in this case to ship the cotton, or that the defendant advised or connived at the shipment. The full extent of the facts, as shown by the proof in the record, is that the cotton was shipped to Memphis, and subsequently the defendant's agent met Fox, the tenant, in Memphis and purchased the cotton from him. There is therefore no case made of connivance between the parties or any conduct that would constitute a destruction of the lien before the cotton was sold by Fox to the defendant in Memphis. The facts in the case do not, in other words, bring it within the decision of this court in the recent case of *Walker* v. *Rose,* 153 Ark. 599. In that case the defendant, with knowledge of the landlord's lien, advised the tenant to ship the cotton to Memphis and sell it there and turn over the proceeds to the defendant, and this was done. We held that this was a wrongful act committed by the defendant upon the rights of the plaintiff as landlord, and resulted in destruction of the latter's lien, which rendered the defendant responsible.

Learned counsel for the plaintiff seek to maintain the right of recovery against the defendant on the theory that, even though the cotton was situated in Tennessee, equity acts *in personam* with power to compel obedience to its mandate, and that the conversion of the cotton in another State did not deprive plaintiff of this remedy. The remedy may have been available if sought before the sale of the cotton which constituted the conversion, but we must, as before stated. test the validity of the act of conversion by the laws of the State of Tennessee, and

if the act was lawful there, there was no remedy here to be enforced against the defendant by the courts of this State. The fact that both parties were residents of this State and amenable to its laws at the time of the conversion in Tennessee does not affect the question of liability for an act committed in another State.

We conclude therefore that there is no liability on the part of the defendant for the value of the twenty-nine bales of cotton purchased from Fox in Tennessee. It is conceded that there is liability for the value of the five bales of cotton purchased in Crittenden County.

The decree is therefore reversed and the cause remanded, with directions to render a decree in plaintiff's favor against the defendant only for the five bales of cotton converted in this State.

HART, J. (dissenting). In saying that the decisions of the court of Tennessee must govern in this case, the majority opinion proceeds upon the theory that it is a case calling for the application of the doctrine of comity.

Judge SMITH and myself recognize that comity will enforce rights not in their nature local, and not contrary to the policy of the government of the tribunal.

In the application of the doctrine of comity, the courts of this State have always enforced the rights of property arising under contracts in another State when such enforcement neither violates our own laws nor infringes on the rights of our own citizens. *F. E. Creelman Lumber Co.* v. *Lesh,* 73 Ark. 16, and *Wray Bros.* v. *H. A. White Auto Co.* But we do not think that comity has any place under the facts disclosed by the record in the present case.

The enforcement in our courts of the laws of another State depends upon our own consent. That consent is given under the doctrine of comity, the scope and the extent of which each State has the right to determine for itself. It has never been the policy of this State to be governed by the decisions of another State, when by so doing it would neglect the duty it owes to

its own citizens to enforce its own statutes and laws according to its own decisions. In short, the courts of this State have always been open to all its citizens to enforce their rights under the statutes of the State, as well as those rights arising under the common law, or founded in equity or natural justice.

If the present suit had been instituted in the State of Tennessee, then the courts of that State would have determined whether they would have recognized the doctrine of comity, as was done in *Newsum* v. *Hoffman,* (Tenn.) 131 S. W. 490, or whether they would have settled the rights of the parties according to their own decisions, as was done in the case of *Kirk* v. *Bailey-Ball-Pumphrey Co.* (Tenn.) ms. op.

The cotton in controversy was grown in Arkansas on the land of the plaintiff, and she had a lien on it under our statute for the rent which had not been paid to her. The cotton was shipped to cotton factors at Memphis, Tenn., by the tenant without the landlord's consent. Then the cotton was sold without the landlord's consent to a bank in Arkansas which had notice of the landlord's lien. Under our own decisions in such cases, where the property has been wrongfully sold, equity fixes a lien on the proceeds in the hands of a purchaser with notice of the landlord's lien. *Reavis* v. *Barnes,* 36 Ark. 575, and *Judge* v. *Curtis,* 72 Ark. 132.

The plaintiff's rights are secured by the statutes of this State, and the defendant resides in the State. The court had jurisdiction of the person of the defendant and the proceeds of the cotton in his hands. In such cases the rights and remedies are determined by our own laws and the decisions of the courts of this State.

As said in discussing a precisely similar question in *Atkinson* v. *Jones,* 96 Ala. 214, 10 So. 846, it would be a strange principle of law which would hold the defendant liable if the cotton had been purchased by it in Arkansas and removed by it into Tennessee, and yet

exempt it from liability if it should buy the cotton in Tennessee with notice of the lien and bring the proceeds of the sale of it back into the State of Arkansas.

The precise question here involved was decided by this court in this way in *Judge* v. *Curtis,* 72 Ark. 132. In that case the cotton was raised in Arkansas and shipped by the Arkansas tenant to a Tennessee factor. The landlord brought suit in Arkansas against the tenant and the Tennessee factor. Personal service was had upon the tenant, and the factor filed an answer after being constructively summoned. The court held that, while the remedy of the absolute owner of property converted by another is at law, a mere lienor's remedy in such case is in equity to fix a lien on the proceeds in the wrongdoer's hands. The court further held that a purchaser of a tenant's crop takes it charged with notice of the landlord's lien if he knew that the relation of landlord and tenant had existed during the previous year, and had no reason to believe that such relationship had ceased to exist.

Therefore, it was held that the landlord had a right to recover the proceeds of the cotton from the merchant in Memphis to whom it had been shipped in part payment of a mortgage executed by the tenant to such merchant. It is true that no point was made in that case about the property being shipped into Tennessee, and the court did not consider that fact in rendering its opinion. The reason was that the rights of the parties were being adjudicated in a court of this State which was enforcing a lien given by a statute of this State against persons who had come under the jurisdiction of an Arkansas court. Therefore it did not make any difference what had been done with the cotton. It was held that an Arkansas court could enforce a lien given by the statutes of Arkansas to its own citizens against persons in another State who had submitted themselves to the jurisdiction of the Arkansas court. This is the ordinary way in

which courts decide cases, and the doctrine of comity has no place in such cases.

Comity, in the very nature of things, means that the courts of one State will enforce the rights of parties arising under the laws of another State where the property in question has been brought into the jurisdiction of the former and such enforcement does not violate its own laws.

To sustain its position that the law of Tennessee must govern on the question of liability in the present case, the majority opinion relies upon *Wilson-Ward Co. v. Farmers' Bank & Trust Co.*, 153 Ark. 368. In that case an Arkansas farmer executed a chattel mortgage on a crop of cotton to be grown in Arkansas to an Arkansas bank, and the mortgagor, without the consent of the mortgagee, shipped the cotton to cotton factors in Memphis, Tenn. The mortgage was a valid one, and the mortgage debt was due and unpaid. The cotton factors answered the suit brought against them in a court of this State for the conversion of the cotton, and this court properly affirmed the judgment of the circuit court; but it seems gave the wrong reason therefor. It relied upon the case of *Newsum v. Hoffman*, decided by the Supreme Court of the State of Tennessee and reported in 124 Tenn. 369, 137 S. W. 490, where the court held that the rights of the parties under a chattel mortgage given in another State would be enforced under the doctrine of comity according to the laws of such State where the property was removed to Tennessee without the consent of the mortgagee.

If the mortgagee in the case of *Wilson-Ward Co. v Farmers' Bank & Trust Co.*, *supra*, had sued the cotton factors in Tennessee, the case of *Newsum v. Hoffman*, *supra*, would have applied, and by comity the rights of the mortgagee under the Arkansas mortgage on cotton grown in Arkansas and removed to Tennessee without the consent of the mortgagee would have been enforced by the courts of Tennessee. But, instead of considering

and discussing what the courts of Tennessee would have done had the suit been brought in that State, this court should have applied the laws and decisions of the State of Arkansas to the case.

The other case relied upon by the majority opinion is that of the *Security Bank & Trust Co.* v. *Bond,* 132 Ark. 592. In that case the courts of this State were enforcing the rights of the parties arising under the statutes of Mississippi to property brought from Mississippi into Arkansas. That was a case of comity, and, as we have attempted to show, has no application to cases where the Arkansas courts are enforcing the rights of parties under an Arkansas statute. In short, our opinion is that, as long as the wrongdoer in cases of this sort submits himself to the jurisdiction, or is found and summoned in this State, the Arkansas courts should administer the laws of Arkansas in the Arkansas way, according to our own decisions.

It will be time enough to say that the decisions of another State must govern when our citizens are compelled to resort to the courts of such State to enforce their rights under our statutes. We have not found any case which holds that, in interpreting or enforcing the rights given by its statutes to protect its own citizens, the courts of one State should yield to the decisions of the courts of another State, instead of applying the decisions of its own courts. Therefore we respectfully dissent.