### DRIVER et al. v. J. T. FARGASON CO.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1923. Rehearing Denied June 4, 1923.)

#### No. 6071.

1. **Landlord and tenant** ⊚⟹241—**Landlord's lien statute held to have no extraterritorial effect.**

   Crawford & Moses' Dig. Ark. §§ 6889, 6893, 2552–2554, the landlord's lien statute, is superior to all other liens within the state, but has of its own force no extraterritorial effect, and the law of the state where an alleged conversion takes place governs in an action to recover damages therefor.

2. **Landlord and enant** ⊚⟹251 (2)—**Conversion of crop subject to lien held not to have occurred within the state.**

   Where cotton factor in one state made advances to crop grower in another state in consideration of a verbal understanding that the grower ship all cotton grown to the factor, with authority to sell and apply proceeds to liquidation of advances made, and the crop grower made a shipment of cotton to such factor, who knew nothing of it until its delivery with the bill of lading by the carrier, the delivery of the cotton to the carrier did not constitute delivery at the point of shipment, and the factor did not connive or commit any overt act in the state of shipment that caused one of the grower's landlords to lose his lien, and was not liable to the landlord.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by Mamie Driver and others against the J. T. Fargason Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

E. S. Driver and J. T. Coston, both of Osceola, Ark., for appellants.

John M. Moore, W. B. Smith, J. Merrick Moore, and H. M. Trieber, all of Little Rock, Ark., and James R. McDowell, of Memphis, Tenn., for appellee.

Before LEWIS, Circuit Judge, and POLLOCK and SYMES, District Judges.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SYMES, District Judge. It appears from the agreed statement of facts upon which this case was tried, that during 1919 and 1920 W. W. Driver, a cotton planter, rented a large acreage of land in Mississippi county, Ark., from various owners including appellants.

Appellee, Fargason Company, cotton factors located and doing business in Memphis, Tenn., advanced the said Driver large sums of money and supplies during 1919 and 1920 in consideration of a verbal understanding, common between factor and planter, that Driver would ship to them all cotton raised by him with authority to sell it as a cotton factor as the market justified, applying the proceeds to the liquidation of the advances made. As his 1920 crop became ready for shipment, Driver from time to time shipped it to Fargason Company by placing it on steamboats at a landing within the state of Arkansas, consigned to the latter at Memphis.

This controversy arises over a shipment of 96 bales raised in 1920 by Driver on land of appellants in Arkansas and shipped to Fargason pursuant to the above verbal agreement. Upon its arrival at Memphis the bills of lading were delivered to Fargason by the steamship company. They took possession and later sold it, applying the proceeds on his account. After the sale of all the cotton so shipped there was still due Fargason a large unsecured balance.

It is also stipulated that until the bills of lading were handed to Fargason by the agent of the steamship company at Memphis, the former did not know anything about the movement of the cotton, the manner of its shipment, when it was to be shipped, or on whose land the 96 bales were raised. Further, that Fargason had no agents or representatives in Arkansas and did not procure its shipment out of the state, but did know that the said Driver was raising cotton on appellants' land, among others, but were not informed of the amount of rent, or whether it had been paid or not. The landlord knew that cotton raised on their land in 1920 was being shipped to Fargason Company, but made no comment or protest, assuming that Fargason Company would honor the draft of Driver in their favor for the rent as had been done in the preceding year.

The law of Arkansas in force at the time of this controversy (Crawford & Moses' Digest, §§ 6889, 6893, 2552, 2553, 2554) gives every landlord a lien upon the crop grown upon his premises in any year for rent that shall accrue for such year, and further provides that it shall be unlawful, among other things, to remove beyond the limits of the state or county in which a landlord's lien exists any property subject to the same, and that it shall be unlawful for any purpose to knowingly aid or abet in the violation of the above provisions. In this suit the appellants are attempting to enforce their landlord's lien against Fargason Company to the extent of the value of the 96 bales of cotton admittedly grown on their land and sold by Fargason Company as aforesaid.

Appellants claim: First, that their landlord's lien was not lost or destroyed by the removal of the cotton from Arkansas to Tennessee but followed it and the proceeds, and was superior to any lien or claim of Fargason. Secondly, that if the landlord's lien was de-

stroyed, Fargason Company aided, abetted, and in fact procured its destruction, and are therefore liable to appellants in conversion. Thirdly, that there was an implied agreement between the tenant and the landlord that the cotton would not be shipped out of the state, and that Fargason by inducing the tenant to breach his contract in this respect were guilty of conversion, and therefore liable for resulting damages.

It will be observed that the appellants' lien was purely a creature of statute, and did not arise out of any contractual relation such as would be the case if there was a chattel mortgage or other specific agreement between the parties respecting the particular res in question. It is therefore valid where, and only where, the statute creating it is enforceable. The question is therefore presented by appellants' three points: Did the lien given by the statute in Arkansas have an extraterritorial effect?

[1] In deciding this question we are aided by two very recent decisions of the court of last resort of Arkansas, Sledge & Norfleet Co. v. Hughes, J. T. Fargason v. Lovewell, 247 S. W. 1077, decided January 22, 1923, and Bank of Commerce of Erle v. Tubb, 247 S. W. 1079, decided January 22, 1923, and a very recent case in this court, Fargason & Co. v. Furst, 287 Fed. 306, decided February 5, 1923. Their facts are sufficiently similar to the instant case to call for the application of the same principles of law. They all hold that the landlord's lien statute of Arkansas is superior to all other liens within the state, but has of its own force no extraterritorial effect, and that the law of the state where the alleged conversion takes place governs in an action to recover damages therefor.

This means that if the conversion complained of took place in Arkansas the lien of appellants, W. W. Driver's landlord, was superior and enforceable for the full amount; while if it occurred after the cotton left that state, the lien did not follow and was not enforceable against the cotton or the proceeds in the hands of a factor in Tennessee. The above cases also decide, and we agree, that the highest court of Tennessee has declared that a statutory lien given by another state cannot be enforced against cotton removed into Tennessee from the other state.

In the first of the Arkansas decisions referred to, the evidence disclosed that the cotton in question was delivered to and accepted by the factor in Arkansas in accordance with previous arrangement, with knowledge of where the cotton was grown and of the landlord's lien. It also appeared that the factor had an interest in the cotton in addition to that of factor, by reason of a mortgage given to the factor by the planter on the crop, entered into and recorded in that state. This mortgage provided expressly for the shipment by the mortgagor to the mortgagee at Memphis of all of the cotton described therein. It was therefore held that the conversion took place in Arkansas, and the landlord's lien was sustained. Sledge & Norfleet v. Hughes et al., supra.

In the second case a tenant planter shipped cotton grown in the state of Arkansas to a concern in Memphis, Tenn., as his factors

288 F.—43

without paying his rent. The court found that the conversion occurred in Tennessee, as there was no evidence of any prearrangement or connivance between the planter and the factor in the shipment. The court accordingly held that the landlord's lien was not enforceable. Bank of Commerce of Erle v. Tubb, supra.

In the federal case referred to, Furst rented his farm located in Arkansas to one Driver and McAdams at a specified rental and they raised cotton thereon. Fargason, factors, engaged in business in Memphis, Tenn., advanced them moneys at different times to make the crop. These loans were evidenced by notes secured by mortgage on the growing crop, which contained an agreement that all cotton grown on this particular place in the year 1920 should be shipped to the mortgagee for sale as commission merchants; the proceeds to be applied on the indebtedness thereby secured. It also recited that the cotton in question was that to be grown on land rented from Furst. Eighty-nine bales were shipped by boat to Fargason, sold by them, and the proceeds applied on the mortgage indebtedness. No part of the rent due Furst was paid, and he brought suit to have his lien for rent established, and for the value of the 89 bales of cotton alleged to have been unlawfully converted by Fargason Company. After passing on other questions not material here, the court held:

"It is insisted, but not very strenuously, by Furst, that his landlord's lien (which will hereinafter be more specifically mentioned), as such, given by the Arkansas statute, followed the cotton and bound it, even after it reached Tennessee. This contention cannot be upheld. This lien arose solely perforce a statute local to Arkansas—not, of course, local, in the sense that no other state has it—but in the sense that a lien is not given by the common law, or by the law merchant, but comes into existence only when a statute creating it is enacted. The rule is general, that a statute of a state has no extraterritorial effect, and that it operates only within the boundaries of the state which enacts it. Wilkinson v. Leland, 2 Pet. 627, 7 L. Ed. 542; McCool v. Smith, 1 Black, 459, 17 L. Ed. 218. Of course, this general rule is merely of value here by analogy. But the ruled cases and the text-writers seem to agree that a landlord's lien created by a state statute has no extraterritorial force. Millsaps v. Tate, 75 Miss. 150, 21 South. 663; 24 Cyc. 1259; 16 R. C. L. 989; 19 Am. & Eng. Encyc. of Law, 24; Underhill, Landlord & Tenant, 1446; Jones on Liens, 103; Marsh v. Ellsworth, 37 Ala. 85. We think the learned trial court was correct in holding that the landlord's lien statute of Arkansas was inoperative in the state of Tennessee."

The court found the facts to be, however, that Fargason Company were not merely a cotton factor, but had an interest in the cotton by reason of the clause in the mortgage that bound the tenants to ship all cotton grown on the land of Furst to Fargason. So the delivery of the cotton to the carrier in the state of Arkansas with the intent to comply with the terms of the written agreement constituted delivery within the state of Arkansas, and therefore the conversion took place there. Judge Faris is particular to state, however, in the opinion, that the mere delivery of cotton by the owner to a common carrier consigned to factor would not ordinarily constitute a delivery to, or create a lien in favor of the consignee. 25 C. J. 393.

[2] The principles of law announced in the above cases are amply supported by the authorities cited therein. Applying them to the in-

stant case, we are of the opinion that the judgment of the lower court dismissing the complaint was correct and should be affirmed. As already stated, appellants' statutory lien is not recognized in Tennessee, and did not arise out of a contract between the parties, which if valid in the jurisdiction where made would be recognized and enforced in other states. Fargason Company's lien was for advances only and did not attach until after the cotton arrived in Memphis and after appellants' lien had ceased to exist. They were not purchasers of, and knew nothing of, this particular shipment until its delivery to them with the bill of lading by the carrier at Memphis. It therefore follows that the delivery of this cotton to the carrier in Arkansas for shipment to a factor in Tennessee did not constitute delivery at the point of shipment. They did not connive at or commit any overt act in Arkansas that caused the landlord to lose his lien. Any other conclusion on these facts would make it unsafe for a factor to receive cotton shipped out of a state that gives the landlord a lien for his rent and, unintentionally perhaps, result in giving such statutes extraterritorial effect.

Judgment affirmed.