

*John D. Goodloe* and *Roy Penix*, for appellants.

*C. M. Buck, Reid & Evrard, Henderson, Meek & Hall* and *Harry E. Meek*, for appellees.

GRIFFIN SMITH, C. J. The appeal questions correctness of a decree that Mrs. M. O. Usrey had not lost a landlord's lien by reason of certain transactions in the handling and sale of cotton. Her tenant was Neely Curtis, whose indebtedness on his rent account was found to be $479.15. Of this sum $300 was cash rent. The balance was for one-fourth of the cotton disposed of.

Other controversies relating to sales of relatively small quantities of cotton are disregarded in this opinion because appellant's prayer is that the judgment in favor of Mrs. Usrey be reversed and that the court below be directed to find that the intervener, Commodity Credit Corporation, has a prior lien on 17 bales of cotton rep-

resented by warehouse receipts pledged as security; or, in the alternative, that liability be decreed against Farmers Bank & Trust Company of Blytheville.

Curtis had rented lands of Mrs. Usrey in 1935, 1936 and 1937. The acts which gave rise to this litigation relate to cotton grown in 1937 and delivered by Curtis to the Shaver-Foster Gin Company. The gin company, acting through Farmers Bank & Trust Company, negotiated loans from Commodity Credit Corporation. Proceeds were retained by the gin company, and it became insolvent.

Mrs. Usrey testified that she made several trips to see Curtis, urging him to get a government loan on the cotton "so she could get her money." The following appears in her testimony:

"Q. I believe you told Mr. Foster [of the Shaver-Foster Gin Company] to pay you directly; and you told Mr. Curtis you wanted them to pay you directly; did you mean 'as they saw fit,' and 'as they saw fit to sell the cotton,' or how—or as it was handled in the loan? A. If handled, I was to be paid as soon as the cotton was sold. My check was to come to me. [It was] not to be held, or anything of that kind."

Mrs. Usrey also testified that the gin company was not to sell the cotton without notifying her.

The bales in dispute were stored with Federal Compress & Warehouse Co. Receipts were delivered to the gin company, and on the strength of these $791.72 was procured from Commodity Credit Corporation. Primary obligations were Curtis' notes. He admitted signing one for $407.25. Four others, aggregating $384.47, were apparently executed by Curtis, but he denied the signatures. All of the notes were transmitted by the bank with the indorsement, "Without recourse."

Legal title to the cotton until disposed of was in Curtis. The landlord had a lien, enforcible within six months from due date of the rent. Pope's Digest, § 8845. The gin company knew of Mrs. Usrey's lien, and officials doubtless intended, after receiving the loan checks, to correctly prorate amounts. But this was not done.

Authority by which the gin company obtained possession of the cotton, and in sequence received warehouse receipts, was the concurrence of Mrs. Usrey and Curtis. While Curtis disclaims having signed four of the notes, he admits directing that advances be procured from the government agency. He knew the receipts would be pledged, and does not repudiate the notes.

Appellees rely upon § 8849 of Pope's Digest[1] to sustain their contention that there can be no innocent holder of the warehouse receipts as against the right of the landlord to enforce her lien. Appellants reply that the lien statute was repealed by § 14453 of Pope's Digest—the Uniform Warehouse Receipts Act, passed in 1915.

It is not necessary to determine this phase of the controversy. If Mrs. Usrey and Curtis authorized the gin company to consummate the loan there was no wrongful disposition of the receipts. The wrong occurred when there was failure to account for proceeds.

In the light of Mrs. Usrey's testimony that she talked with Curtis and with Ollie Foster of the gin company about procuring a government loan; that she urged them to "hurry it up"; that the gin company was authorized to sell Curtis' cotton and to retain for her account a sum equal to one-fourth of the rent payable in kind, it must be held that she entrusted the gin company with the receipts. She says there was the condition that she be notified when sales were made, and that "papers" be executed in her name and in that of Curtis.

As expressed, *supra,* the breach of faith occurred not in the bank's manner of handling the loan application, nor in acceptance of the receipts by Commodity Credit Corporation, but in failure of the gin company to account to Mrs. Usrey and Curtis when the loan remittance was received.

The gin company was Mrs. Usrey's agent. It was permissively in possession of the cotton, with authority

---

[1] "The purchaser or assignee of the receipt of any ginner, warehouse-holder or cotton factor or other bailee for any cotton, corn or other farm products in store or custody of such ginner, warehouseman, cotton factor, or other bailee shall not be held to be an innocent purchaser of any such produce against the lien of any landlord or laborer."

to sell and to remit one-fourth to her. She is charged with knowledge of a custom, and therefore must have known that the ginners did not long retain the physical property, but either sold it or stored it in a warehouse. Commodity Credit Corporation had no notice of the reservations Mrs. Usrey says attached to the authority of her agent, and it is not bound thereby.

In American Jurisprudence, v. 2, § 105, Chapter on Agency, it is said: 'Although a principal may limit the authority of his agent in any manner he pleases and make his limitations binding and obligatory between himself and his agent, such limitations are not necessarily binding upon third parties. Special or secret instructions or limitations upon the authority of an agent, whose powers would otherwise be coextensive with the business intrusted to him must be communicated to the party with whom he deals, or the principal will be bound to the same extent as though they were not given. Such instructions or limitations are not binding upon a third person who deals with the agent in good faith without knowledge of such instructions or limitations, and in reliance upon the apparent authority with which the principal has clothed him.''

In *Calais S. B. Co.* v. *Scudder,* 2 Black (U. S.) 372, 17 L. Ed. 282, it was said: ''No secret agreement between the principal and agent can effect third persons who purchase from the agent, where the agent was in possession of the property and documentary evidence of ownership, and was thus held out to the world as the legal owner.''[2]

That part of the decree holding that Commodity Credit Corporation and Reconstruction Finance Corporation were not innocent purchasers of the warehouse receipts is reversed, and the cause is remanded with directions to enter an order holding that the two government agencies are not bound by the liens. In all other respects the decree is affirmed.

[2] For Arkansas cases on the subject, see West Publishing Company's Arkansas Digest. vol. 14, "Principal and Agent," subdivision 116—"Undisclosed Limitation of Authority."