GRAUMAN *v.* JACKSON.

4-9038                                                    225 S. W. 2d 678

Opinion delivered January 9, 1950.

*Peter A. Deisch, C. L. Polk, Jr.* and *David Solomon, Jr.,* for appellant.

*A. M. Coates,* for appellee.

GEORGE ROSE SMITH, J. An 1885 statute provides that the purchaser of the receipt of any ginner, warehouse-holder, cotton factor or other bailee of farm products shall not be held to be an innocent purchaser of such produce as against a landlord's lien. Ark. Stats. 1947, § 51-205. The principal question in this case of first impression is whether the above statute, to the extent that it purports to give the landlord priority over the purchaser of a negotiable warehouse receipt, has been repealed by the Uniform Warehouse Receipts Act, adopted in 1915. *Ibid.,* §§ 68-1201—68-1258.

The facts may be stated in a few sentences. In the spring of 1948 the appellee rented land to Walter Harris and took his note for $1,000, representing rent in the amount of $472.50 and also the tenant's future indebtedness for money and supplies to be furnished by the landlord for the making of a crop. In the fall the appellee

permitted Harris to gin four bales of cotton in his own name and to deposit them in a bonded warehouse. The warehouse receipt for the bale now in controversy is a negotiable bearer receipt, which recites that the cotton was received from Walter Harris. Harris obtained a sample of the cotton and sold the warehouse receipt to the appellant, who made no investigation of Harris' title other than to inquire if any one else had an interest in the cotton. The reply was in the negative. Harris later left the State without having paid his debt to the appellee—who now contends that the appellant holds the property subject to the landlord's statutory lien.

We dispose first of a preliminary contention that the appellant could not have been an innocent purchaser for the reason that the tenant's note was secured by a deed of trust upon the crop. If the deed of trust had been properly executed and filed this contention would be sound; for the Uniform Act, as it affects this case, provides that the negotiation of a warehouse receipt carries only such title to the goods as the person making the negotiation either had or had ability to convey to a *bona fide* purchaser. Ark. Stats., § 68-1241. Of course Harris could not have conveyed an unencumbered title to the cotton itself if the deed of trust gave constructive notice of a contractual lien. But this deed of trust was defective in two respects. First, it was not recorded, and in filing it with the circuit clerk the appellee failed to endorse on it the required statement that it was to be filed but not recorded. Ark. Stats., § 16-201; *Gasconade Development Co.* v. *McIlroy Bk. & Tr. Co.*, 195 Ark. 404, 112 S. W. 2d 653. Second, this printed form contained blank spaces for the description of a crop, but these spaces were not filled in; so in fact the deed of trust conveyed only certain mules and equipment that were specifically described. Hence the instrument did not give constructive notice of a contractual lien on the cotton, and the court below erred in refusing to instruct the jury to that effect.

Upon the principal question the language of the Uniform Act is altogether free from ambiguity. Under

the terms of the Act, as we have seen, by negotiating the receipt Harris conveyed such title to the cotton as he had the ability to convey to a *bona fide* purchaser. It has long been the law in Arkansas that the landlord's statutory lien is defeated if the tenant sells the crop to an innocent purchaser. *Hunter* v. *Matthews,* 67 Ark. 362, 55 S. W. 144. The 1885 statute laid down a different rule when the tenant sells merely a bailee's receipt, as distinguished from the crop itself, but that statute is in direct conflict with the Uniform Act whenever a negotiable warehouse receipt is involved. We have no doubt that the Uniform Act did repeal the earlier statute in part. The purpose of the later Act is to create throughout the nation a uniform system of law governing the business transactions to which it applies. The Act has now been adopted in all forty-eight states. It is evident that the desired uniformity cannot be achieved if the Act is subordinated to pre-existing legislation in each state. It must also be observed that this same conflict between the Uniform Act and a landlord's lien statute has arisen in three other jurisdictions, and in all three the Uniform Act has prevailed. *Salt River Valley Water Users' Ass'n* v. *Peoria Ginning Co.,* 27 Ariz. 145, 231 P. 415; *Buelow* v. *Abell,* 9 La. App. 624, 121 So. 657; *McGee* v. *Carver,* 141 Miss. 463, 106 So. 760. The goal of uniformity manifestly requires the various courts to give serious consideration to one another's views in the interpretation of this legislation.

The appellee insists that our holding in *Lynch* v. *Mackey,* 151 Ark. 145, 235 S. W. 781, compels us to concede the landlord's priority. But in that case the passage of the Uniform Act was completely overlooked, in the opinion as well as in the briefs. That decision must be regarded as a mere reassertion of the law as it existed before the Uniform Act was adopted. Further, in the later case of *Commodity Credit Corp.* v. *Usrey,* 199 Ark. 406, 133 S. W. 2d 887, we expressly recognized the possibility that the Uniform Act had partly repealed the 1885 statute, but we found the decision of that question not necessary to the disposition of the case.

The remaining issue concerns the appellant's duty to investigate Harris' title before purchasing the receipt. The appellant contends that he should be protected if he acted honestly, while the appellee argues that a purchaser must be charged with whatever information a reasonably prudent man would have obtained in the circumstances. We think the appellant's view is the correct one and that upon a retrial the jury should be instructed upon that theory.

With respect to negotiable instruments in general, it has long been the rule that the purchaser is required to be honest rather than to be free from negligence. This is the test embodied in the Uniform Negotiable Instruments Act. Ark. Stats., § 68-156; *Holland Banking Co.* v. *Booth,* 121 Ark. 171, 180 S. W. 978. When warehouse receipts and bills of lading were made negotiable by uniform legislation, one would have expected the draftsmen of these acts to give to the purchaser the same protection that existed in the case of bills and notes. We think this was done, for both acts contain this provision: "A thing is done 'in good faith' within the meaning of this act when it is in fact done honestly, whether it is done negligently or not." Ark. Stats., §§ 68-1153 and 68-1258.

We find only two cases that have analyzed this question under the Warehouse Receipts Act, and they reach opposite conclusions. We much prefer the reasoning of the Tennessee court in *Starkey* v. *Nixon,* 151 Tenn. 637, 270 S. W. 980, where it was said: "It seems to us that the test of notice imposed by this statute is the same as that imposed by section 56 of the Negotiable Instruments Act."

In the other case, *City Nat. Bk. of Decatur* v. *Nelson,* 218 Ala. 90, 117 So. 681, 61 A. L. R. 938, the majority's blunt statement that the Uniform Act was not intended to overturn the well-understood meaning of a *bona fide* purchaser is to us unconvincing. Rather, we agree with the view ably expressed by SOMERVILLE and BROWN, JJ., dissenting: "The fallacy here . . . is in the assumption that there had been heretofore only one definition of a

*bona fide* purchaser. On the contrary, there have been two distinct and conflicting definitions for more than 100 years . . ., the one applicable to purchasers of property and non-negotiable instruments, and the other to purchasers of negotiable instruments . . . The obvious purpose of § 58 of the Uniform Warehouse Receipts Act is to make clear which of these two variant definitions or theories should be applied to *bona fide* purchasers of negotiable warehouse receipts, and it clearly adopts the rule applicable to negotiable instruments in general; that is, the rule of *honesty* as opposed to the rule of *negligence*. In excluding negligence it rejects the very heart of the common-law rule; and in making honesty the test it adopts the very heart of the negotiable instruments rule."

Reversed.

McFADDIN, J., dissents.