SLEDGE & NORFLEET COMPANY *v.* HUGHES.
J. T. FARGASON COMPANY *v.* LOVEWELL.

Opinion delivered January 22, 1923.

1. LANDLORD AND TENANT—CONVERSION OF CROP—WHAT LAW GOV-
ERNS.—In a suit by a landlord against a mortgagee to en-
force his statutory lien, and to hold the mortgagee liable for
having converted the crop, where it was a question whether the
conversion took place in this or an adjoining State, *held,* if the
conversion took place in the other State, the law of that State
governs as to the mortgagee's liability.

2. LANDLORD AND TENANT—PLACE OF CONVERSION OF CROP.—Where
cotton upon which the statutory lien existed was mortgaged by
the tenant, and, according to prearrangement, the cotton was de-
livered in this State to a carrier to be shipped to the mortgagee
in another State, who subsequently sold the cotton, the conver-
sion took place in this State, and liability therefor was to be de-
termined by the laws of this State.

3. LANDLORD AND TENANT—MORTGAGEE NOT MERELY A FACTOR WHEN.
—Where a cotton grower agreed with a mortgagee to ship his
cotton out of the State to be sold by the mortgagee, the proceeds
to be applied on shipper's account, the mortgagee was not merely
a factor, but he had an interest in addition to his interest as
factor, as against the holder of a landlord's lien.

4. LANDLORD AND TENANT—CONVERSION OF CROP—LIABILITY.—Where
a mortgagee of cotton arranged with a tenant to ship his cotton
out of the State, having notice of plaintiff's lien thereon as land-
lord, it was liable to the landlord on the ground of the destruc-
tion of the lien.

5. LANDLORD AND TENANT—WAIVER OF LIEN.—Where a mortgagee
of cotton arranged with a tenant to ship it out of the State, and
thereby defeat a landlord's lien on the cotton, mere knowledge
on the landlord's part that the shipment was made did not con-
stitute a waiver of his lien.

Appeal from St. Francis Chancery Court; *A. L.
Hutchins,* Chancellor; affirmed.

*Mann & Mann,* for appellants.

The conversion of the cotton having occurred in the
State of Tennessee, the lien created under the laws of
Arkansas did not apply. 16 R. C. L. 505; 82 Miss. 740;
75 Miss. 150; 24 Cyc. 1259; Jones on Liens, vol. 1, p.
74, sec. 111. The general rule is that the statutes of a
State have no extraterritorial effect. 16 R. C. L. 989.

*Moore, Smith, Moore & Trieber* and *Jas. R. Mc-Dowell,* for appellants.

The landlord's lien statute has no effect beyond the limits of the State. 75 Miss. 150; 21 So. 663; 73 Miss. 434; 16 So. 910; 73 Miss. 410; 19 So. 210; 16 R. C. L. 989; 19 Am. & Eng. Enc. of Law, 24; 24 Cyc. 1259; 2 Underhill on Landlord & Tenant, 1446; Jones on Liens, p. 103, sec. 111; 37 Ala. 85. There was no conversion of the cotton by appellant in Arkansas. 48 Am. Dec. 754.

*R. D. Smith* and *C. W. Norton,* for appellee Hughes.

The landlord's lien for rent comes into existence with the coming of the crop into existence, and exists uninterruptedly thereafter as a presently vested right and species of property. 25 Ark. 417; 25 Ark. 609; 27 Ark. 1; 95 Ark. 32; 139 Ark. 318; 213 S. W. 741. Actual knowledge is not necessary to constitute notice; the purchaser is put on notice by any facts such as would put a man of ordinary prudence upon inquiry that would lead to a knowledge of the landlord's lien. 69 Ark. 306; 63 S. W. 47; 56 Ark. 478; 72 Ark. 132; 78 S. W. 746. A lien created by contract is not lost by the subsequent removal of the property to another State, although the law of that State with reference to the preservation of liens is not complied with. Wharton, Conflict of Laws 717; 173 Fed. 478; 109 N. C. 10; 13 S. E. 721; 13 L. R. A. 740; 29 Fed. 156; 10 So. 846.

*Randolph & Randolph,* for appellee Lovewell.

McCulloch, C. J. In each of the cases under consideration the appellees sued in the chancery court to recover the proceeds of cotton grown during the year 1920, on which they asserted liens as landlords: and in each case the appellant, defendant below, is a Tennessee corporation doing business in the city of Memphis, and the cotton in controversy in each case was shipped by a common carrier from the State of Arkansas, where the cotton was grown, to the appellant at its place of busi-

ness in Memphis. The similarity of the facts in the two cases brings them within the operation of the same controlling principles and justifies the disposal of them in one opinion.

The facts of the first case mentioned in the caption, as found by the chancery court, in accordance with the preponderance of the testimony, are as follows:

Appellee, Mrs. C. A. Hughes, owns a plantation in St. Francis County, and rented it for the year 1920 to Tucker & Friar, a copartnership, for a stipulated rental price of $7,500, to be paid in money. In the early part of the same year the tenants, Tucker & Friar, executed a mortgage to appellant, Sledge & Norfleet Company, on all of the crops produced by them, including those grown on the farm of appellee, which were specifically described in the mortgage. The mortgage was executed to secure notes aggregating $50,000, and further advances of money to be made during the year. The mortgage contained a stipulation that the mortgagors should, during the harvesting season of 1920-21, ship to appellant, as commission merchants, all of the cotton described in the mortgage. Pursuant to the stipulation in the mortgage, Tucker & Friar shipped their crops of cotton to appellant by common carrier, including 152 bales grown on the farm of appellee, the proceeds of which were to be credited to their account. In addition to this, Tucker & Friar shipped 47 bales, to be applied on the rent, to appellee, which were so applied, leaving a balance unpaid, which appellant subsequently refused to pay out of the remainder of the proceeds. The court rendered a decree in favor of appellee against appellant for the recovery of $4,573.26, the balance of the rent.

In the other case the appellees rented a farm in Mississippi County to W. W. Driver for a series of years, including the year 1920, the rental price per annum being about $29,000, the amount of the decree in favor of the appellees against appellant. During the year 1919, Driver mortgaged the crop to appellant and shipped his

cotton to appellant, pursuant to a stipulation in the mortgage, and the rent was paid out of the proceeds. Appellant carried over a large debt balance against Driver, and made further advances during the year 1920, but no mortgage was given on the crop produced that year. The testimony establishes the fact, however, that it was verbally agreed between Driver and appellant that the cotton should be shipped to appellant as during the previous year. It was shipped to appellant by common carrier, and was sold and the proceeds applied on Driver's debt to appellant, leaving a large balance. Appellant refused to pay the rent out of the proceeds of the cotton.

In each of the cases the testimony supports the finding that the appellant knew, when it received the cotton, that it had been grown on the farm of appellees, and that the rent had not been paid. There was testimony, at any rate, to show that the appellant in each case was cognizant of facts sufficient to afford notice of a lien on the crop.

The contention of appellant is that the cotton was received in Memphis and that the conversion occurred there, and they invoke the rule announced by some of the authorities that a statutory lien has no extraterritorial force so as to create liability for conversion in another State.

If the conversion took place in Tennessee, the law of that State must govern the question of liability. *Security Bank & Trust Co.* v. *Bond,* 132 Ark. 592; *Wilson-Ward Co.* v. *Farmers' Bank,* 153 Ark. 368.

In an unpublished opinion of the Supreme Court of Tennessee, recently delivered (*Kirk* v. *Bailey-Ball-Pumphrey Co.*) which has been brought to our attention by counsel, the court declared the law of that State to be that the statutory landlord's lien of another State (Arkansas) has no extraterritorial effect and cannot be enforced against cotton removed to the State of Tennessee.

The opinions in those cases are not in conflict with the decisions in *F. E. Creelman Lumber Co.* v. *Lesh,* 73 Ark. 16, and *Wray Bros.* v. *H. A. White Auto Co.,* 155 Ark. 153, nor with the reasoning of the opinions therein, for in the latter cases we held that the lien of a chattel mortgage given and recorded in another State in accordance with the laws of that State should, even against an innocent purchaser for value, be enforced here by comity when the mortgaged chattel has been removed to this State without the consent of the mortgagee. In the one class of cases the right of action for conversion arose in another State and was enforced here under the rule of comity, whilst in the other class the lien of a foreign mortgage was also enforced here under the comity rule because the property was here or a conversion occurred here.

We need not decide where the weight of authority lies on this question of extraterritorial effect of statutory liens, but must accept the declaration of the Tennessee Supreme Court as the final arbiter concerning the laws of that State.

If, however, the conversion occurred in the State of Arkansas, our laws control, and the lien is effective, unless waived. Or if the cotton was transported out of this State by the connivance here of appellant so as to destroy the lien and prevent its enforcement, this established liability on account of the violation of the rights of the landlord. *Walker* v. *Rose,* 153 Ark. 599.

The delivery and acceptance of the cotton by appellants occurred in this State by delivery to a common carrier, according to prearrangement between the parties, and the conversion was complete here. *May* v. *McGaughey,* 60 Ark. 357; *Gottlieb* v. *Rinaldo,* 78 Ark. 123; *Templeton* v. *Equitable Mfg. Co.,* 79 Ark. 456; *Main* v. *Jarrett,* 83 Ark. 426: *Josey* v. *State.* 88 Ark. 269: *Bray Clothing Co.* v. *McKinney,* 90 Ark. 161; *Roberts Cotton Oil Co.* v. *Grady,* 105 Ark. 53.

There was an express agreement in each case for the shipment of the cotton by public carrier, and delivery to the carrier constituted delivery to the consignee. It is contended on behalf of the appellant in each case that, while the rule applies in an ordinary instance of sale and delivery of goods, it does not apply so as to constitute a conversion of the property at the time of the delivery to the public carrier. We perceive no ground for this distinction. As between the parties, the delivery became complete for all purposes when it passed into the possession of the carrier for transportation to the consignee. Nothing else remained to be done to complete the delivery to the consignee, and the conversion was then consummated.

But it is also argued that the consignee in each of these cases was a factor—the agent of the shipper. Not so. The proof shows that appellant had an interest in addition to that of factors. The cotton was shipped to them for sale and application on their several accounts against the shippers. Moreover, their prearrangement with the tenant to ship the cotton out of the State with notice of this lien of the landlord constituted a destruction of the lien, if the lien was thereby destroyed, and they are liable to the landlord on that ground. *Walker* v. *Rose, supra.*

Our conclusion therefore in each of these cases is that appellants are liable for the value of the cotton to the extent of the liens of the respective landlords.

In the Fargason case it is contended that, as a portion of the cotton was shipped to appellant by the tenant after appellant's refusal to pay the rent out of the cotton already shipped, this constituted a waiver of the lien to the extent of the value of that portion of the cotton. The landlords did not consent to the shipment of cotton. Mere knowledge of the shipment did not constitute consent so as to operate as a waiver. They had the right, in the absence of express consent, to stand upon this lien which they had already asserted, and no waiver can be

implied from the mere fact that they failed to commence an action to enforce the lien on the cotton before it was shipped out of the State. It is not a case where the landlord stood by and permitted a sale of cotton to an innocent purchaser without notice of the lien. Appellant was aware of the lien, and knew that the landlords were claiming under it.

The decree in each case is correct and is affirmed.

HART and SMITH, JJ., concur.