### ROBBINS v. BOSTIAN.

#### No. 12419.

Circuit Court of Appeals, Eighth Circuit.

Nov. 9, 1943.

---

For former opinion see 135 F.2d 298.

J. W. House and D. D. Panich, both of Little Rock, Ark., for appellant.

Frank P. Barker, of Kansas City, Mo. (Winger, Reeder & Barker, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order of the trial court which sustained an order of a referee in bankruptcy denying the claim of appellant to possession of a rock crusher.

The claim of appellant is bottomed on a conditional sales contract executed in Arkansas, where the property was located at the time of its execution, between himself, a resident of Arkansas, and the bankrupt, a corporation with its principal place of business in Kansas City, Missouri. The contract in form reserved title in appellant, the vendor.

Following the sale the property was removed to Nebraska. In Arkansas the contract was valid as -between the parties thereto and as against creditors or subsequent purchasers without the necessity of filing or recording it. Appellant did not file his conditional sales contract in Nebraska, nor did he make any attempt to comply with the Nebraska statute (Sec. 36-208, C.S.Supp.1941), which provides that, "No sale, contract or ·lease, wherein the transfer of the title or ownership of personal property, except motor vehicles, is made to depend upon any condition, shall be valid against any purchaser, judgment creditor or mortgagee of the vendee or lessee in actual possession, obtained in pursuance of such sale, contract or lease without notice, unless the same be in writing, signed by the vendee or lessee, and said contract or a copy thereof filed in the office of the clerk of the county within which such vendee or lessee resides: * * *."

The contract was entered into June 3, 1941, and within fifteen days thereafter the vendee removed the crusher to the State of Nebraska where it remained in its possession until it came into the custody of the bankruptcy court on January 22, 1942. The referee in bankruptcy made certain findings on the issue of removal, consent of the vendor, and other pertinent questions. These are found in three separate documents. In his "Opinion and Findings" he found that at the time of sale appellant was told that the vendee had jobs in Missouri and Nebraska and that it was contemplating a large job near Blue Mountain, Arkansas. He found further that,

"At that time (the time of sale) O. B. Robbins, the seller, thought that the crusher was going to be used in the State of Arkansas, but there was no agreement or understanding between the parties that the crusher was not to be taken out of the State of Arkansas.

"The bankrupt in good faith thought that it had the right to move the crusher out of that State and shortly thereafter did move it to the site of the bankrupt's job near Table Rock, Nebraska.

"O. B. Robbins, the seller, definitely learned that the crusher was in Nebraska. This occurred about the time the first payment on the contract became due which was August 1, 1941.

*   *   *   *   *   *

"The crusher remained at Table Rock, Nebraska, from the time it arrived in June, 1941, until January 22, 1942, when the Peairs-Lynch Stone Company was duly adjudicated a bankrupt. At that time the Receiver in Bankruptcy took possession of the crusher and later sold it for the sum of $12,000.00 with the understanding that the lien, if any, to O. B. Robbins, was to attach to and follow the proceeds of sale.

"Thus O. B. Robbins knowingly acquiesced in the removal of the crusher to Table Rock, Nebraska, from and after August 1, 1941, and he did not file his conditional sales contract in that state, even though he had ample time to do so. The bankruptcy proceedings of the Peairs-Lynch Stone Company were commenced on January 22, 1942, more than five months

after Mr. Robbins learned about the removal to the State of Nebraska."

In his order denying the claim of appellant the referee recited: "That at the time of said sale the removal of said crusher and its use by the bankrupt for the crushing of stone on a highway construction job near Table Rock, Pawnee County, Nebraska, was contemplated by the parties, and that in the month of June, 1941, the bankrupt with the consent of the intervener moved said crusher from Arkansas to Table Rock, Nebraska, and there, on or about July 20, 1941, began its highway construction job and the use of said crusher; that said crusher remained in Nebraska in the possession of the bankrupt until the filing of the petition and adjudication in bankruptcy therein on January 22, 1942, and thereafter came into the possession of the trustee in bankruptcy * * *."

In his certificate on review the referee apparently made further findings as follows:

"At the time of the sale, the bankrupt considered the removal of the crusher from Arkansas to its job in Nebraska, and the intervener (appellant) later on impliedly consented to such removal and use.

"Although the crusher remained in Nebraska for more than five months after intervener (appellant) had knowledge of the removal, he took no steps to record his contract in that state nor elsewhere."

The trial court in affirming the order of the referee holding the lien of appellant invalid against the trustee in bankruptcy, recited some of the facts found by the referee without expressly holding that the referee had found a prior consent to removal. The court said: "Moreover, there was no substantial dispute on any facts save as to the date when the intervener learned that the property had been moved to Nebraska. In the view hereinafter expressed this seems immaterial for the reason that the property was in Nebraska several months before bankruptcy intervened and after the vendor knew of its removal."

In its order the court found that, "The intervener (appellant) had notice of the removal of the property covered by his conditional sales contract into the State of Nebraska and thereafter failed and neglected to record said contract as required by the laws of Nebraska * * *."

The appeal has been twice considered. Following its first presentation and submission we handed down an opinion expressing the view that on the record the lien created by the conditional sales contract and confessedly good in Arkansas, where the property was located at the time of the execution of the contract, had not been lost by the removal to the State of Nebraska; that there was no finding to the effect that at the time of the execution of the contract the parties intended that the property should be removed to another state and no evidence to sustain such contention, and that the removal resulted only in a temporary situs of the property in Nebraska. We therefore reversed the judgment appealed from. Robbins v. Bostian, Trustee, 8 Cir., 135 F.2d 298. On petition for rehearing the views we had expressed with reference to the laws of Nebraska and the purport and effect of the findings of the referee were vigorously challenged, and after careful consideration we granted a rehearing, vacated our judgment theretofore entered and restored the cause to the docket permitting the parties to file additional or supplemental briefs. The parties have accordingly filed very exhaustive supplemental briefs and the case has been resubmitted and is again before us for disposition.

Appellant places great stress upon the findings of the referee. It is true that there are certain statements in these findings which if sustained by the evidence would require us to accept as a fact that the crusher was removed from Arkansas to Nebraska "with the consent of the intervener;" also that the removal was "contemplated by the parties." These expressions, however, are inconsistent with the finding that appellant thought the crusher was going to be used in the State or Arkansas and with the finding that he learned on August 1, 1941 that the crusher was in Nebraska, and with the finding that he knowingly acquiesced in the removal "from and after August 1, 1941." It is observed too that the referee found that appellant, after the removal of the crusher, impliedly consented to such removal and that "although the crusher remained in Nebraska for more than five months after intervener had knowledge of the removal, he took no steps to record his contract." These recitals are inconsistent with a finding that appellant consented to the removal or that the removal was con-

templated at the time of the execution of the contract.

We have examined the testimony of witnesses on this question of consent to removal, and we are clear that there is no evidence that appellant consented to the removal of the property prior to its removal to Nebraska. The most that can be said with reference to the record in this regard is that it shows that after the property was removed appellant learned that it had been moved to the State of Nebraska and was there being used, and that notwithstanding this knowledge, which he acquired some five months before petition in bankruptcy was filed, he did nothing toward complying with the Nebraska statute relative to the filing of his conditional sales contract. This failure to act after knowledge seems to have been the basis of the decision of the trial court. If the court was correct in this view, then we need not concern ourselves with whether appellant gave prior consent to the removal of the property, nor, indeed, whether the property acquired only a temporary situs in that state. In passing it may be noted that the machine is a bulky inert structure, weighing some twenty tons, which can not be moved on its own power, nor was it simply being transported through the State of Nebraska.

Appellee was in possession of the property when appellant first asserted his lien and sought to recover its possession. Appellant must therefore recover, if at all, upon the strength of his own title and not upon any weakness of that of appellee. In addition to being in possession as trustee of the bankrupt vendee, he was vested with all the rights, remedies and powers of a creditor then holding a lien by legal or equitable proceedings. Section 70, sub. a, of the Bankruptcy Act makes invalid against the trustee in bankruptcy a reservation of title in a conditional vendor, if under the applicable state law a judgment creditor might have levied upon and sold under judicial process against the bankrupt the property subject to the contract, as the property of the bankrupt, and Section 70, sub. c, provides that the trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy, or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor exists, and as to all other property the trustee shall be deemed vested as of the date of bankruptcy, with all the rights, remedies and powers of a judgment creditor then holding an execution duly returned unsatisfied, whether or not such a creditor actually exists. Section 70, as amended June 22, 1938, c. 575, Sec. 1, 52 Stat. 879, Title 11 U.S.C.A. § 110. The trustee primarily represents the creditors of the bankrupt and although the contract was valid in Arkansas even as against subsequent creditors of the vendee, and was good in Nebraska as between the parties, it may nevertheless be invalid as to creditors becoming such in Nebraska while the property was there located and being operated without actual or constructive notice of appellant's claim. Whether or not such creditors acquired rights above those of the vendee must be determined by the law of the situs of the property—in this case, the law of Nebraska. Globe Grain & M. Co. v. De Tweede Northwestern & Pacific Hypotheekbank, 9 Cir., 69 F.2d 418; Fry Bros. v. Theobold, 205 Ky. 146, 265 S.W. 498; United Construction Co. v. Milam, 6 Cir., 124 F.2d 670; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. It is therefore necessary to consider the status of the law of Nebraska.

The Nebraska statute above quoted clearly invalidates the contract unless it can be said that the property right created thereby in the State of Arkansas through comity survives in Nebraska. This is a question of public policy upon which the law of Nebraska must be controlling.

In Bradley & Co. v. Kingman Implement Co., 79 Neb. 144, 112 N.W. 346, 347, the contract was made in one state, the property removed to another state in which it permanently remained, and the removal was contemplated at the time of entering into the contract. The case is therefore readily distinguishable. But it does contain a significant statement with reference to the public policy of the State of Nebraska as follows: "Public policy, as asserted in the extension of our registry laws, requires that the public record shall show the ownership of personal property, and a construction which is favorable to that end should be given to the act."

There is a series of Nebraska cases, referred to as the Pennington County Bank cases. The first of these was Pennington County Bank v. Bauman, 81 Neb. 782, 116 N.W. 669. This was a replevin action for the recovery of horses and mules mortgaged to the Pennington County Bank in South Dakota, where the property was located at the time of the execution of the mortgage, by one Sigman. Sigman shipped the property from Rapid City, South Dakota, consigning it to himself at Long Island, New York. In transit the property was attached in Nebraska by a creditor of Sigman. The court sustained the validity of the chattel mortgage but denied recovery to the mortgagee because its petition did not affirmatively disclose that there had been any breach of the conditions of the mortgage entitling it to possession of the property. The creditor who sued out the writ of attachment then sued the Pennington County Bank for damages on the replevin bond. In that action, by cross-petition, the bank set up the maturity of the mortgage and alleged that it was entitled to the possession of the property. The trial court, however, held the first judgment res judicata. On appeal this holding was reversed. Pennington County Bank v. Bauman, 85 Neb. 226, 122 N.W. 848. On rehearing, however, the opinion was set aside and the judgment appealed from was affirmed. Pennington County Bank v. Bauman, 87 Neb. 25, 126 N.W. 654, 655. In this opinion, on the question now before this court, the court said:

"There is another reason why the judgment of the district court should be affirmed. The plaintiff now insists that its lien as an attaching creditor upon the property in question in the replevin action was superior and paramount to that of the mortgage. This point was not brought to our attention on the former hearing, but is now urged with much force.

"In Snyder v. Yates, 112 Tenn. 309, 79 S.W. 796, 64 L.R.A. 353, 105 Am.St.Rep. 941, it was held that a chattel mortgage duly recorded in one state will not, under the doctrine of comity, be given priority by the courts of another state, to which the chattels are removed, over local attaching creditors who had no actual notice of it. This rule seems to be supported by the great weight of authority in many of our sister states, and we are of opinion that where a mortgagee residing in another state where his mortgage is recorded, per-

mits the mortgagor to bring the property into this state, a bona fide attaching creditor of the mortgagor, without notice, will acquire a lien thereon by virtue of his attachment sued out in this jurisdiction superior to that of the mortgagee."

It is observed that a mortgage, valid where executed, and where the property had a situs in another state at the time of its execution, was held subordinate to the lien of local attaching creditors who seized the property as it was temporarily resting in the state in transit to New York.

In Farmers' & Merchants' State Bank v. Sutherlin, 93 Neb. 707, 141 N.W. 827, 828, 46 L.R.A.,N.S., 95, Ann.Cas.1914B, 1250, a horse was taken from Washington County, Kansas, to Nebraska. At the time a valid chattel mortgage was duly filed in Kansas. In Nebraska the mortgagor sold the horse to a bona fide purchaser for value without notice. The removal of the horse from Kansas to Nebraska was without the consent of the mortgagee. In holding the mortgage valid in Nebraska, the court said: "This court has heretofore held, on the authority of Snyder v. Yates, 112 Tenn. 309, 79 S.W. 796, 64 L.R.A. 353, 105 Am.St.Rep. 941, that a chattel mortgage duly recorded in one state will not, under the doctrine of comity, be given priority by the courts of another state to which the chattels are removed with the consent of the mortgagee over local attaching creditors who had no actual notice of the mortgage. Pennington County Bank v. Bauman, 87 Neb. 25, 126 N.W. 654. The decision in the latter case seems to have been mainly based upon another ground. In any event, it would seem that there is a distinction between a case where a mortgagee voluntarily permits the mortgagor to remove the same into another state, there to become subject to the laws of that state, and a case where the property is moved without his consent, and regardless of the rights secured to him by mortgage. In the one case he is willing to place his security in a position where his rights may come in conflict with those of the citizens of the state to which the property is removed, and he has no right to complain if the courts of that state hold that he has waived his right of priority by failing to take possession and that his claims are subsequent to that of its own citizens. In the other case his property has been taken away in despite of him and without his consent, and he must rely up-

on the comity of the state to which it has been taken to enforce the validity of the contract and protect his rights."

In this case, the Nebraska Supreme Court recognizes a distinction between a removal permitted by the mortgagee or other lienholder, and one without such permission.

█ If the vendor, subsequently to the time of the sale, consents to the removal of the property to another state where the contract is not filed nor recorded, his rights are subordinate to those of the creditor of the vendee. Restatement Conflict of Laws, Secs. 276, 277, 278. No logical distinction can, we think, be drawn between the case of a lienholder who knowingly permits removal and one who does not permit but upon learning of the removal acquiesces for an undue period in that removal. By such inaction he indicates a willingness to permit his security to remain "where his rights may come in conflict with those of the citizens of the state to which the property is removed." Farmers' & Merchants' State Bank v. Sutherlin, supra; United Construction Co. v. Milam, supra.

In the Sutherlin case, the Nebraska court adopts a rule of reciprocal comity, and it is urged here that with the situation reversed, Arkansas would hold the lien valid and therefore it should be held valid in the instant case. The cases from Arkansas indicate that the state follows the rule that the lien persists in that state after removal from a foreign state where the lienholder has not consented to the removal. Wray Bros. v. H. A. White Auto Co., 155 Ark. 153, 244 S.W. 18; Sledge & Norfleet Co. v. Hughes, 156 Ark. 481, 247 S.W. 1077, 1078. But here, vendor's knowledge of the situs of this property in Nebraska and his acquiescence for a period of five months in that removal, was tantamount, we think, to a consent to the removal. United Construction Co. v. Milam, supra. The decisions of the State of Arkansas would not, we think, warrant us in concluding that that state would sustain the lien where the lienholder had consented, in view of the spirit of the Nebraska decisions and the public policy of that state as declared by its Supreme Court. Thus, in Sledge & Norfleet Co. v. Hughes, supra, the court referred to the enforcement of the rights of a lienholder from a foreign jurisdiction "by comity when the mortgaged chattel has been removed to this state without the consent of the mortgagee." What the Nebraska court said in the Sutherlin case on the subject of reciprocal comity was said in a case involving a removal without the knowledge or consent of the mortgagee. The language can not, therefore, be extended to a case where the lienholder has acquiesced in the situs of the property and thereby consented to its removal.

It follows that the judgment appealed from should be and is affirmed.