In the Matter of PRODUCTION AIDS CO., Inc., Bankrupt.
No. 4–517.

United States District Court
S. D. Iowa,
Davenport Division.
March 22, 1961.

Charles G. Rehling, and Thomas O. Lindburg, Davenport, Iowa, for James Winfield.

Henry R. Ottesen, Davenport, Iowa, for the Trustee.

Ralph U. Heninger, Davenport, Iowa, for First Trust and Savings Bank.

Max H. Christie, Davenport, Iowa, for Cory Machine and Tool Co.

STEPHENSON, District Judge.

This matter originally came before this Court on separate petitions for review filed by the Trustee of the Bankrupt, Production Aids, and by James Winfield, a creditor of the bankrupt, claiming a lien on certain property. After an oral hearing before the Court wherein the claimant, James Winfield, claimed he was not afforded a full opportunity to be heard before the Referee, the matter was referred back to the Referee by this Court for the purpose of taking further evidence pertaining to the priority between the claimant James Winfield and another creditor-claimant, First Trust and Savings Bank, hereinafter referred to as First Trust.

Subsequent to this Order referring the matter back, James Winfield made a request that the Court determine whether the acknowledgements on certain mortgages made by the bankrupt to First Trust and Winfield, were sufficient under the law. First Trust likewise filed a request for a ruling asking the Court to determine whether or not jurisdiction is vested in the Referee to make a determination of the priority of interest between the two adverse claims, First Trust and James Winfield. First Trust now contends that since the bankrupt through the Trustee abandoned the property, which is the subject matter of these mortgages in the dispute, and no stay of proceedings was requested as to the Referee's Order pertaining to the possession of the property, the Order having directed that possession be surrendered to First Trust, that the rights of the Trustee would now be limited to following the property and obtaining possession thereof from whomsoever now claims to be the owner.

It now appearing that the issues in this matter could be greatly simplified by the Court ruling in respect to the foregoing matters, the Court makes the following determinations:

The first consideration is the sufficiency of the acknowledgement appearing on Trustee's Exhibit 6, which is a chattel mortgage from the bankrupt to Cory Machine and Tool Co., subsequently assigned to First Trust, and the acknowledgement appearing on Trustee's Exhibit 7, which is a chattel mortgage from the bankrupt to James Winfield. These mortgages will be referred to as the First Trust mortgage and the Winfield mortgage respectively. The acknowledgement on the First Trust mortgage appears as follows:

"State of Iowa
County of Scott
"On this 26th day of May, 1959, before me, a Notary Public in and for said County, personally appeared Walter J. Long, Vice-President, to me personally known who, being by me duly sworn, did say that he is an agent of said Production Aids Company, (Inc.) and authorized to execute the within instrument and that said instrument was executed in behalf of said Company by due authority of said Walter J. Long, Vice President, acknowledged said instrument to be the free and voluntary act and deed of said Company for the purposes and consideration therein expressed.

"/s/ Mildred E. Cain
Notary Public in and
for said County"

This acknowledgement was signed by Mildred E. Cain and her Notary Seal was duly affixed.

The acknowledgement appearing on the Winfield mortgage is as follows:

"State of Iowa
County of Scott } ss.

"On this 18th day of April, A.D. 1957, before me, the undersigned, a notary public in and for Scott County, Iowa, personally appeared Production Aids Inc. by: Walter J. Long, Vice-President to me personally known to be the identical person— named in and who executed the foregoing instrument and acknowledged that they executed the same as their voluntary act and deed.

"/s/ Rosemary Renihan
Notary Public in and
for said County and
State

"My commission expire 7–4–57"

This acknowledgement was properly signed by a Notary whose seal was duly affixed.

The Trustee argues that these acknowledgements are insufficient under the Iowa laws in that Section 558.38, Code of Iowa, 1958, I.C.A., provides:

"If the acknowledgement is made by the officers of a corporation, the certificate shall show that such persons as such officers, naming the office of each person, *acknowledged the execution of the instrument as provided in Section 558.39.*" (Emphasis supplied)

Section 558.39 provides in part, as pertinent here:

"The following forms of acknowledgement shall be sufficient in the cases to which they are respectively applicable * * *

"3. In the case of corporations or joint-stock associations:

On this —— day of ——, A. D. 19—, before me, a

(Insert title of acknowledging officer) in and for said county, personally appeared ——, to me personally known, who being by me duly {sworn or affirmed} did say that he is

(insert title of executing officer) of said {corporation association}, that

{the seal affixed to said instrument is the seal of said}

{no seal has been procured by the said}

{corporation association} and that said instrument was signed and sealed on behalf of the said {corporation association} by authority of its board of {directors trustees} and the said —— acknowledged the execution of said instrument to be the voluntary act and deed of said {association corporation} by it voluntarily executed."

The Trustee reasons that Section 558.38 then makes mandatory the exact form found in Section 558.39(3), or that at least the same elements found in the form of Section 558.39(3) must be found, substantially in the disputed acknowledgement.

First Trust argues that the language of Section 558.39 "shall be sufficient" renders Section 558.39(3) a permissive form and that the acknowledgement appearing on the First Trust mortgage is sufficiently equivalent to this permissive form to be legally effectual. Winfield is not able to as easily dispose of the question of sufficiency of the acknowledgement appearing on his mortgage. He argues that Section 558.30, Code of Iowa, I.C.A., provides mandatory provisions controlling the sufficiency of an acknowledgement. Section 558.30 provides as follows:

"The court or officer taking the acknowledgment must indorse upon

the deed or instrument a certificate setting forth the following particulars:

"1. The title of the court or person before whom the acknowledgment was made.

"2. That the person making the acknowledgment was known to the officer taking the acknowledgment to be the identical person whose name is affixed to the deed as grantor, or that such identity was proved by at least one credible witness, naming him.

"3. That such person acknowledged the execution of the instrument to be his voluntary act and deed."

Winfield argues that Section 558.30 is complied with in each of the three provisions as follows:

(1) The title of the person before whom the acknowledgement was made is shown.

(2) That Production Aids, Inc., may properly be called a "person" for purposes of this Section in that the acknowledgement states that the officer taking the acknowledgement knew both persons, Walter J. Long and Production Aids, Inc., who signed the mortgage.

(3) That the certificate recites that the execution of the instrument was the voluntary act and deed of Production Aids, Co.

■ It appears that Winfield has ignored the provisions of Section 558.38, above quoted, in his argument which provides for the contents of a certificate of acknowledgement when the acknowledgement is made by an officer of a corporation. It is noted that Section 558.30 speaks of a person making an acknowledgement; Section 558.36 provides that an instrument executed by an attorney in fact may be acknowledged by the attorney, and Section 558.37 provides the contents of a certificate of acknowledgement in the case of execution by an attorney in fact. Section 558.38 immediately follows and simply states that when an acknowledgement is made by an officer of a corporation, the certificate shall contain the acknowledgement of the officer, as set out in Section 558.39. It would plainly appear that the Iowa Legislature intended to provide for the contents of a certificate of acknowledgement when made by an individual person (Section 558.30), when made by an attorney in fact (Sections 558.36 and 558.37), and when made by an officer of a corporation (Section 558.38 referring to Section 558.39(3)). Our inquiry then is simply whether the certificate of acknowledgements on the Winfield and First Trust mortgages contained the requisite of Section 558.38. That statute provides that the officer must acknowledge the execution as provided in Section 558.39, which statute in the form pertinent here provides four things which the officer must state, namely, (1) his title or office with the corporation, (2) pertaining to the seal of the corporation, (3) the execution was on behalf of the corporation by authority of its board, and (4) that it was the voluntary act and deed of the corporation. Items (3) and (4) are the only ones which could be considered as relating to *the execution* of the instrument, and therefore, Section 558.38 must refer to them in stating, "such person * * * acknowledged the execution." (1) and (2) are statements which the form would have the officer make, but do not relate to statements or acknowledgements of *the execution* of the instrument.

■ It has been long established in Iowa that a certificate of acknowledgement need not follow the requisites of the statute verbatim, but need only substantially comply with the object and intent of the statute. Tiffany v. Glover, 1852, 3 G. Greene, Iowa, 387, at page 394. Milner v. Nelson, 1892, 86 Iowa 452, 53 N.W. 405, 19 L.R.A. 279, 41 Am.St.Rep. 506.

■ It is the holding of the Court that the acknowledgement on the First Trust mortgage substantially complies with the Iowa statutes. The certificate

of acknowledgement contains the officer's Walter J. Long's statement that the instrument was executed in behalf of the company and that he was authorized to execute it, and the instrument was the voluntary act and deed of the corporation. The only criticism of the acknowledgement in these two respects is that it failed to state that the authorization came from the Board of Directors of the Corporation. The Court cannot conceive that the omission of the specific source of authority would render the certificate fatally defective in light of the statement that the officer was in fact authorized to execute the instrument. As to the other two statements, the form in Section 558.39(3) would require the officer to make, the certificate does state the officer's relation, or title, to the corporation; however, the certificate does not contain any statement as to the seal of the corporation. As previously stated, these latter two items are only statements which the form would have the officer make, they do not relate to the execution of the instrument which the officer must acknowledge in the manner provided by the form, and therefore, the omission of the statement pertaining to the corporate seal is not considered to render the certificate fatally defective.

It is the finding of the Court that the certificate of acknowledgement on the Winfield mortgage is fatally defective. Nowhere in the certificate does the officer of the corporation acknowledge that the instrument was signed on behalf of the corporation and by authority of it. Nor does the officer, in his capacity as an officer (Section 558.38) acknowledge that the corporation executed the instrument as its voluntary act and deed.

The Court is aware of the decision of American Laundry Machinery Co. v. Everybody's Laundry, 1919, 185 Iowa 760, 171 N.W. 161, where it was held that in the case of an agent of a corporation executing a conditional sales contract bearing the stamped signature of the corporation and the agents written signature, a certificate of acknowledgement was sufficient where the agent acknowl- edges it as his own act and deed and not as the act and deed of the corporation. But this decision turned on the fact that the agent was authorized to sell and dispose of the property in question in his own name, and as to the purchaser, he was not the mere agent of another, but was a principal and vendor.

A question has also arisen as to the certificate of acknowledgements of Trustee's Exhibits 3, 4 and 5 which are conditional sales contracts by the Cory Machine and Tool Co., Frank W. Cory, sole proprietor, vendor, and the bankrupt purchaser. Exhibits 3 and 5 came into evidence with no certificate of acknowledgement written on the instrument or attached thereto. The Recorder of Scott County, Iowa, testified that these contracts were presently in the same condition as when filed with the County Recorder and that to his knowledge no attachments were removed. The only evidence supporting the contention of First Trust, to whom these contracts were assigned by Cory, that a certificate of acknowledgement was attached, was the concession of the Recorder that it was not his custom to admit for recording, filing or indexing instruments which are not acknowledged, and the fact that there appear to be staple marks on the instruments. The Recorder also stated that the instruments had been taken apart for the purpose of making copies in his office and then put back together. The Referee found that Exhibits 3 and 5 were in fact properly acknowledged. There is no evidence to support this finding and therefore, it is overruled, and this Court finds that Trustee's Exhibits 3 and 5, being the conditional sales contracts referred to above, were not in fact acknowledged.

In the Winfield Petition for Review, it is alleged that the Referee erred in finding that the "contracts of conditional sale * * * were properly acknowledged." In the Trustee's Petition for Review he restricts the error to the finding only in regard to Exhibits 3 and 5. It is noted that in the Winfield brief only Exhibits 3 and 5 are considered and

no argument is presented attacking the acknowledgement on Exhibit 4, another conditional sales contract. It would, therefore, appear that the certificate of acknowledgement on Exhibit 4 is not disputed. In any event, it is an acknowledgement by Production Aids Company and Cory Machine and Tool which is a sole proprietorship of Frank Cory's. Section 556.4, Code of Iowa, 1958, I.C.A., states that the conditional sales contract need be acknowledged only by the vendor or vendee. Conceding that Production Aids' acknowledgement would be ineffectual as the certificate is not in corporate form, since Cory Machine and Tool is a sole proprietorship, the personal acknowledgement of Frank Cory, owner and vendor under Section 556.4 would be sufficient. It is also noted that unlike Section 556.3, relating to the recording of chattel mortgages which provides that the mortgage must be "acknowledged like conveyances of real estate", Section 556.4 contains no such provision and therefore strict compliance with the real estate acknowledgement statute would not be required. The Trustee relied on In re Elliott, 8 Cir., 1934, 72 F.2d 300 which held that real estate type acknowledgements must be used under both Sections 556.3 and 556.4. It should be noted that subsequent to this decision, Section 556.4 was amended, omitting the phrase considered in the Elliott case as requiring the same acknowledgement used in Section 556.3.

In view of this Court's holding that the conditional sales contract, Exhibits 3 and 5 were not acknowledged, it is now essential to determine what rights the trustee would have in property sold to the bankrupt under an unrecorded conditional sales contract (a defectively acknowledged or unacknowledged contract having the same status as an unrecorded contract).

The Referee, in his finding of facts and conclusions of law stated, in referring to the conditional sales contracts, Exhibits 3, 4 and 5:

"It is, however, the holding of this Court that even if the contracts had been defectively acknowledged or not acknowledged at all they were nevertheless valid as between the Bank and the Bankrupt. The Trustee takes no better title than the Bankrupt unless he can establish a claim as a creditor under Section 70(c) of the Bankruptcy Act. Section 70(c) as to such rights must be interpreted in accordance with Iowa law and under Iowa law a judgment creditor is subordinated to the interest of the conditional vendor even where the contract is not acknowledged or recorded. Therefore, it is held that the interest of the Bank in and to the subject chattels is absolute as against the Trustee and is superior to the interest of James Winfield."

This Court cannot concur with the referee's view on the matter. It is true that the Trustee would take the same title as the Bankrupt unless he can come within Section 70, sub. c, 11 U.S.C.A. § 110, sub. c, and that under Iowa law a judgment creditor is subordinated to the interest of the conditional vendor. However, under Section 70, sub. c the Trustee acquires the status of more than a mere judgment creditor. That Section provides in part as follows:

"The trustee, as to all property, whether or not coming into the possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

█ █ The powers and rights of the "creditor" referred to are to be determined by the law of the state. In re Pointer Brewing Co., 8 Cir., 1939, 105 F.2d 478; Robbins v. Bostian, 8 Cir., 1943, 138 F.2d 622. Under the Iowa law there is no question but what a general creditor may obtain a lien against a debtor's property through the process

of attachment or execution. See Lee County Sav. Bank v. Snodgrass Bros., 1918, 182 Iowa 1387, 166 N.W. 680. There has been no contention that the property involved is of a class or nature immune from such proceedings.

It being determined that a creditor of the bankrupt could have obtained a lien against the property in Iowa, our next inquiry is as to the nature of that lien, especially if it is superior to the rights of a vendor under an unrecorded conditional sales contract.

 Section 556.4 Code of Iowa 1958, I.C.A., provides in part that no conditional sales contract shall be valid against any creditor of the vendee unless the same is acknowledged and recorded. The term "creditor" as used in this statute refers to a lien creditor without notice. Nauman Co. v. Bradshaw, 8 Cir., 1912, 193 F. 350; International Harvester Co. of America v. Poduska, 1931, 211 Iowa 892, at page 896, 232 N.W. 67, at page 69, 71 A.L.R. 973. Therefore, by Section 556.4, in Iowa, the rights of a lien creditor without notice are superior to those of the vendor under an unrecorded conditional sales contract, Vorse v. Loomis, 1892, 86 Iowa 522, 53 N.W. 314, and as the property involved here is of such a nature that, in Iowa, a creditor could have obtained a lien by legal or equitable proceedings, the trustee obtains the status and rights of such a creditor, and those rights, as stated above, would be prior to those of the unrecorded conditional sales contract vendor's.

In support of its contention that a Trustee's rights are inferior to those of a vendor under an unrecorded sales contract, First Trust cites the case of In re Pointer Brewing Co., 8 Cir., 1939, 105 F.2d 478. First Trust claims that the Pointer case is a four-square precedent. It is true that in that case the Court was dealing with a conditional sales contract, which although recorded, was not acknowledged and the Court held that the vendor, under this unacknowledged conditional sales contract, had superior rights in the property in-

volved than the Trustee of the bankrupt, vendee. It is readily apparent, and conceded, that the Pointer facts are identical to those in this case pertaining to Trustee's Exhibits 3 and 5. However, First Trust has ignored the fact that the bankruptcy statutes upon which the Pointer case was determined have been amended and reorganized.

First Trust argues, and it is true, that the Congress of the United States could not change the law of Iowa as to priority between a lien creditor and a vendor under an unrecorded conditional sales contract by amendment of the Bankruptcy laws. But contrary to First Trust's argument, the Pointer case does not find the Iowa law in this regard to be any different than has been stated above by this Court. The distinguishing fact of the Pointer case is that it was decided under what was then Section 47, sub. a of the Bankruptcy Act (11 U.S.C.A. § 75, sub. a) which states in one sub-section, as follows [105 F.2d 479]:

"(a) Trustees shall respectively * * * (2) collect and reduce to money the property of the estates for which they are trustees, under the direction of the court * * *; and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

In the Pointer case the property involved was in the custody of the Court so that the Trustee would have had the same rights in the Pointer property as the present Trustee would have under the current Section 70, sub. c. What is now absent in the present Section 70, sub. c is the phrase introducing and in juxtaposition to the phrase "and such trustees as to all property in the custody or com-

ing into the custody of the bankruptcy court shall be deemed vested, etc." That introductory phrase, delegating another duty to the Trustee tended to condition the word "property" in stating,—"Trustees shall * * * collect and reduce to money the property of the estates for which they are trustees."

The Pointer case, it would appear, turns on interpreting the word "property" in the phrase "and such trustee, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested etc." to mean property of the bankrupt's estate, for the Pointer decision was deeply concerned with the Iowa view that between the parties to a conditional sales contract, the title to the property involved remained in the vendor, and the decision sets out illustrative quotes to this effect from Gluck Co. v. Therme, 1912, 154 Iowa 201, 134 N.W. 438, and International Harvester Co. v. Poduska, supra. The Pointer decision stated at page 481 of 105 F.2d:

> "The contract, under the Iowa law, being valid as between the parties, title to the property remained in the vendor, and when the vendee filed its petition for reorganization the property covered by the conditional sale contract was not the property of the debtor, and hence, did not pass to the trustee."

It has been stated that the International Harvester Co. of America v. Poduska case, supra, was authority to the effect that a Trustee takes only as good a title as a bankrupt. The Poduska case does not involve a Trustee acquiring rights under a statute such as Section 70, sub. c, but there the Court was concerned with an assignee, and the case is cited in the Pointer case not as authority that a Trustee under then Section 47, sub. a would take only as good a title as the bankrupt, but was cited for the proposition that in Iowa a vendor retains title under a recorded or unrecorded conditional sales contract.

The Pointer case distinguishes the case of Albert Pick & Co. v. Wilson, 8 Cir., 1927, 19 F.2d 18 the only difference being the Albert Pick case involved an unacknowledged chattel mortgage. This again points up the fact that the Pointer decision turned upon the fact that under a conditional sales contract in Iowa, title remains vested in the vendor.

The present Section 70, sub. c has been removed from its original spot in Section 47, sub. a(2). The portion of Section 70, sub. c material here commences "the trustee, as to all property * * *". There is no longer any intimation that the word "property" here means property in the bankrupt's estate. This conclusion is also dictated by a reading of the 1950 amendment of Section 70, sub. c and the 1952 amendment of the same Section, whereby the words (property) "of the bankrupt" were deleted, and the accompanying House Report, H.R.Rep. No. 2320, 82nd Congress, 2nd session, page 16, as set out and explained in Lewis v. Manufacturers National Bank, 1961, 364 U.S. 603, commencing at page 606, 81 S.Ct. 347, at page 349, 5 L.Ed.2d 323:

> "In 1950 Sec. 70, sub. c was recast to read as follows: ' * * * The trustee, as to all property of the bankrupt at the date of bankruptcy whether or not coming into possession or control of the court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists.' 64 Stat. 26.

> "Thus the distinction between property in the possession of the bankrupt as of the date of bankruptcy and other property was abolished; and the trustee was given the status of a creditor holding a lien through legal or equitable proceedings as to both types of property. This 1950 Amendment, however, created an anomaly. The House Report accompanying a 1952 amendment that cast Sec. 70c in its present form states:

" * * * it is now recognized that the amendment did not accurately express what was intended. Since the trustee already has title to all of the bankrupt's property, it is not proper to say that he has the rights of a lien creditor upon his own property. What should be said is that he has the rights of a lien creditor upon property in which the bankrupt has an interest or as to which the bankrupt may be the ostensible owner. Accordingly, the language of Section 70c has been revised so as to clarify its meaning and state more accurately what is intended'."

 It is noted that this District Court decided the Pointer Brewing matter, from which decision appeal was made to the Circuit Court of Appeals for the Eighth Circuit and affirmed. However, this District Court held that the trustee would have prevailed had he made a showing that he did not have actual notice of this conditional sales contract at the time the property came into the possession of the bankruptcy court, reasoning that under the Iowa recording statute for conditional sales contracts, now Section 556.4, the lien-creditor referred to must be without notice. This court cannot now agree with that holding unless the notice that the trustee did obtain would arise from facts giving notice to all the world, as was conceded in In re Settem, 118 F. Supp. 897 (D.C.Minn.1954). That the trustee under Section 70, sub. c acquires the status of a lien creditor *without notice* is well settled in various Circuits throughout the United States, Fifth Third Union Trust Co. v. Kennedy, 2 Cir., 1950, 185 F.2d 833; In re Lindsey, D.C.N.J.1955, 131 F.Supp. 11; In re Sayre Village Manor, D.C.N.J.1954, 120 F.Supp. 215; Bergin v. Waterson, 10 Cir., 1960, 279 F.2d 193; and In re Chappell, D.C.Or.1948, 77 F.Supp. 573 which also holds that statements in the bankruptcy schedules do not constitute notice to the trustee as here involved. To the same effect, In re Holley, D.C.

N.D.Iowa 1928, 25 F.2d 979 and In re Youngs Cornell Utilities, D.C.E.D.N.Y. 1937, 20 F.Supp. 381.

Winfield contends that the Referee in Bankruptcy was without jurisdiction to determine priorities between Winfield and First Trust after the Referee found that the bankrupt no longer owned the machinery in question. Jurisdiction of the bankruptcy court here is grounded on Section 2, sub. a(6) and (7) of the Bankruptcy Act, (Title 11 U.S.C.A. § 11, sub. a(6) and (7)), which provides as follows:

(Trustees shall:)

"(6) Bring in and substitute additional persons or parties in proceedings under this title when necessary for the complete determination of a matter in controversy.

"(7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided; * * *; and where in a controversy arising in a proceedings under this title an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time * * * for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction;"

 In the Referee's Findings of Fact and Conclusions of Law, it is found that the bankrupt had possession of the machinery in question. It would, therefore, appear that the Referee had jurisdiction to determine the rights of the adverse parties to this property in the possession of the bankrupt, and the authorities so hold. Thompson v. Magnolia Co., 1940, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Solomon v. Allied Bldg. Credits. 8 Cir., 1954, 209 F.2d 828; Bradley v. St. Louis Terminal Warehouse Co., 8 Cir., 1951, 189 F.2d 818; Milens v. Bostian, 8 Cir., 1943, 139 F.2d

282; Kelso v. Maclaren, 8 Cir., 1941, 122 F.2d 867.

In his brief Winfield has cited the four following cases as authority for his proposition that the Referee here does not have jurisdiction to pass on the priorities of the adverse claimants to this property. The case of Kaplan v. Guttman, 9 Cir., 1954, 217 F.2d 481 involved property in which the bankrupt had no interest and which was not shown to be in the possession of the bankrupt and is therefore distinguishable. The case of In re Hotel Martin Co. of Utica, 2 Cir., 1938, 94 F.2d 643 is not applicable in that it only ruled that the bankruptcy court was without jurisdiction to restrain the president of the bankrupt to sell his personal bonds in satisfaction of a personal judgment. This was a three paragraph per curiam opinion. The case of Evarts v. Eloy Gin Corp., 9 Cir., 1953, 204 F.2d 712, certiorari denied 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384, is likewise nonapplicable in that it involves a third party's claim against the president of the bankrupt for compensation the president personally agreed to pay the claimant. The court held that the lower court had no jurisdiction to adjudicate this claim. The case of In re Cord-Way Products, D.C.E.D.N.Y. 1948, 79 F.Supp. 672, relates to a claim between third parties for storage fees the one party claimed the other owed him. Although these fees arose through property that belonged to the bankrupt, there was no other relation to the bankruptcy proceedings and the court correctly held that there was no jurisdiction over this claim in bankruptcy. This decision again, does not support the proposition urged by Winfield.

First Trust contends that it is no longer a proper party to these proceedings and that the claims now asserted against it by the Trustee and Winfield ought to be dismissed for mootness.

First Trust grounds this theory on the fact that pursuant to the Referee's Order it took possession of the chattels involved and that pursuant to a guarantee agreement negotiated directly between it and the guarantor, it has been fully paid by the guarantor. First Trust argues that as the other parties in this matter failed to file supersedeas under Section 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, First Trust had every right to dispose of the property under the guarantee agreement and as the parties to this suit can acquire no lien upon the proceeds realized from the guarantee agreement, they must follow the property, joining the guarantor as a party, thereby eliminating First Trust.

In that the other parties failed to file supersedeas the Court agrees that First Trust was within their right to take possession of the property pursuant to the Referee's order and dispose of it as they saw fit. Also, the Court fully agrees that it is the law of Iowa that a mortgagee ordinarily can neither acquire a lien nor impose a trust upon the proceeds of a sale by a mortgagor of mortgaged property, but rather his lien follows the property. Scurry v. Quaker Oats Co., 1926, 201 Iowa 1171, 208 N.W. 860.

Nevertheless this Court cannot agree with First Trust in their contention that they are no longer a proper party to this action. Contrary to their argument, this action has not resolved from one to determine liens on property to an action to follow a fund. Even in a case cited by First Trust for the proposition that without supersedeas they may dispose of the property, the Court states, "the defeated party had the right to an appeal, and the fact that he was unable to give a supersedeas did not affect the appeal." Quinn v. Gardner, 8 Cir., 1929, 32 F.2d 772, at page 773.

Perhaps the most that can be said for the parties' failure to file supersedeas is that it was a compliment to First Trust's solvency, for, as stated above, the other parties would normally be unable to impress a trust upon the proceeds First Trust acquired from the guarantee agreement, nor could they prevent First Trust from disposing of the chattels free from their possible rights determined on appeal. But if the

matter is subsequently determined adversely to First Trust they will be liable to restitute to the prevailing parties; but to enforce this restitution those parties will probably only be able to obtain a general judgment against First Trust.

This memorandum will constitute the Court's findings on the various points now presented by the parties for determination.

It is hereby ordered that this matter will now be referred back to the Referee for further findings on the priorities between Winfield and First Trust, pursuant to the Order of this Court of September 30, 1960.